Okey, J.
I. The record discloses the fact, and the alleged error is insisted upon by the defendants, that in the Town *588 street case, the preliminary ordinance declaring the improvement to be necessary, was published in tbe Sunday Morning Mews, a newspaper published and circulated in Columbus on Sunday only, and that the notice was published in no other newspajier. The master finds that newspaper was at the time of general circulation in Columbus. It also appears that in the High street case, the ordinance providing for the improvement, and the assessment ordinance for one section of that improvement, were also published in that newspaper and no other. And it appears that at the time of these various publications, other newspapers, dailies and weeklies, were published and generally circulated in the city of Columbus on week days only. The municipal code of 1869, amended in 1870 (67 Ohio L. 71), and then in force, provided (§§ 100, 103), among other things, that all ordinances “ providing for improvements shall be published in some newspaper of general circulation in the corporation ; if a daily twice, and if a weekly once, before going into operation. And no ordinance shall take effect until the expiration of ten days after the first publication of such notice.” And that “ it shall be deemed a sufficient defense to any suit or prosecution, under any ordinance, to show that no such publication. . . as herein required, was made.”
The question whether such publication in a Sunday newspaper is a legal or valid notice being thus directly presented, we have bestowed upon it that care which its importance demanded, and will now state the result.
1. Anciently, at common law, courts were authorized to and did sit on Sunday, for the rendition of judgments and for all other purposes, precisely as on other days of the week (Swann v. Broome, 3 Burrow, 1595; s. c., 1 W. Bla. 526; Hiller v. English, 4 Strob. L. 486); and process of every sort might be as lawfully executed (Mackalley's case, 9 Coke, 66 b), and work, labor and business of every kind might be as lawfully done (Bloom v. Richards, 2 Ohio St. 387; McGatrick v. Wason, 4 Ohio St. 566), on that day as on any other.
2. By force of the adoption by several Saxon kings, and geueral acquiescence for centuries in such adoption, the canon *589 promulgated A. D. 517 acquired the force of, and became in truth common law, in a single particular, namely, that process awarded, or a judgment rendered by a court on Sunday was void, and that is the law wherever the common law prevails, except as modified by statute. Swann v. Broome, Hiller v. English. Whether this prohibits the receipt of a verdict on Sunday, is a matter about which there is some conflict, with the weight of authority in favor of the power to receive the verdict on that day. In Morehead v. State (reported on other points in 34 Ohio St. 212), the verdict was received on Sunday, and this court unanimously held that there was no error in so receiving it. That process issued by a ministerial officer, in the ordinary course of official duty, is not process awarded hy a court, within the meaning of the above phrase, was shown in Clough v. Shepherd, 31 N. H. 490.
3. While at common law a judgment could not be rendered or process awarded by a court on Sunday, an arrest in a civil cause and service of process of any sort, on that day, they being merely ministerial acts, were at common law as perfectly valid and lawful as if made on any other day. Mackalley's case; Swann v. Broom; Clough v. Shepherd; Matthews v. Ansley, 31 Alabama, 20; Sayles v. Smith, 12 Wend. 57; Gwynne on Sheriffs, 93; Stapleton v. Reynolds, 5 Leg. Rec. 242.
4. Chiefly with a view to remedy the defects existing at common law, the statute 29 Car. II. c. 7 (1 Stats, at Large, rev. ed. 779), was enacted. That statute, which remains in force except as modified by 7 and 8 Geo. IV. c. 75, provides, among other things, as follows: § 1. “ No tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business, or work of their ordinary callings upon the Lord’s day or any part thereof (works of necessity and charity only excepted), and that every person being of the age of fourteen years or upwards, offending in the premises, shall for every such offense forfeit the sum of five shillings.” Section 6. “ No person or persons upon the Lord’s day, shall serve or execute, or cause to be served or executed, any writ, process, warrant, order, judgment or decree (except in cases of treason, felony or breach of the peace), but that the ser *590 vice of every such writ, process, warrant, order, judgment or decree shall be void to all intents and purposes whatsoever.”
5. During part of our territorial period and a portion of time under the state government;, but not since 1806, English' statutes not inapplicable to our circumstances and condition, enacted prior to 4 James I., were in force in Ohio, but statute 29 Car. II. was not among the English statutes which have been in force with us at any time. Crawford v. Chapman, 17 Ohio, 449; Drake v. Rogers, 13 Ohio St. 21; Knapp v. Thomas, 39 Ohio St. 385. Hence there has never been in this state any other limitations on the power of a ministerial officer to serve or execute process of any sort, on one day more than another, than those made by statute of this state.
6. Comparison of our statutes with respect to arrests and labor with the statute 29 Car. II. shows that our legislators wrere perfectly familiar with the latter act, and deliberately adopted in'a modified form some of its features and rejected others. Keeping in mind that we must find in these statutes of our own state the only limitations on the power of a ministerial officer to serve or execute process on Sunday, we will examine those acts. And first the act of 1799, 1 Chase, 257. That act provided in section 1, that members of the legislative council and house of representatives and their officers, during sessions, and electors while attending elections, should be privileged from arrest; and in sections 2 and 3, that judges, sheriffs, clerks, attorneys, witnesses and suitors should be privileged frotn arrest while attending court. Section 4 provided : “ That no person shall bo arrested while doing military duty, under the order of his commanding officer, or while going to, or returning from the place of duty or parade ; nor shall any person be arrested on the first day of the week, commonly called Sunday ; or in any places of public worship, during the performance of divine worship ; or in the chamber of the legislative council or house of representatives, during their sitting, or in any court of justice, during the sitting of the court; or on the .fourth day of the month of July, the anniversary of American independence.” Section 5 provided : “ That nothing herein contained shall be construed *591 to extend to eases of treason, felony or breach of the peace.” And section 6 provided: “That nothing herein contained shall be construed to privilege any person herein named from being served, at any time, with a summons or notice to appear.” And this statute, although repealed and re-enacted a number of times, and so enlarged as to exempt certain other persons, remains to this day substantially as enacted in 1799. 1 Chase, 494; 3 Chase, 1841, 3 Curwen, 2519; 1 S. & C. 83; S. & S. 18; 75 Ohio L. 697, 698; Rev. Stats. §§ 5457-5459. As without this statute an arrest on Sunday would be perfectly lawful, no rule of construction would authorize us to regard the provision denying the power to arrest on Sunday as a prohibition of the service of a summons on that day. To leave no doubt about the matter, however, it is, as will be seen, in effect, provided, by the former as well as present statute, that a summons may be served “ at any time.”
7. Reference has also been made to the statute which, among other things, prohibits common labor on Sunday. That act was adopted by the judges in 1788 (1 Chase, 97-101, § 22), and it has been repeatedly re-enacted by the legislature, with slight modifications. In 1805, 1 Chase, 503, c. 93, § 1; in 1810, 1 Chase, 643, c. 204, § 1; in 1815, 2 Chase, 867, c. 339, § 1 ; in 1816, 2 Chase, 912, c. 359, § 1 ; in 1824, 2 Chase, 1349, c. 600, § 1; in 1831, 3 Chase, c. 834, § 1, 3 Curwen, 2384, 1 S. & C. 447 ; in 1864, 61 Ohio L. 104, S. & S. 289 ; in 1877, 74 Ohio L. 281, and in 1880, Rev. Stats. §§ 7032, 7033. But the words “ common labor ” cannot extend to the acts of a public officer in the performance of official duty for several very satisfactory reasons. First. Such duty is not within the ordinary meaning of the words. Secondly. In Bloom v. Richards, supra, Thurman, J., in speaking of those words and the statute in which they occur, took occasion to say: “ The law in question is a penal statute, and is therefore to be construed strictly. Such statutes are not to be extended by implication.” And see Moore v. State, 12 Ohio St. 387; Fuller v. State, Ib. 433. Thirdly. An examination of the English statute, above mentioned, prohibiting labor, etc. on Sunday, shows the prohibition had no relation whatever to official duties. *592 Indeed, so strict is the construction it receives in that country that it is held not to extend to the sale of a horse by one not a dealer in horses (Drury v. Defontaine, 1 Taunt. 131), contract of hiring by a farmer or work by a farmer (R. v. Whitnash, 7 B. & C. 596; Scarfe v. Morgan, 4 M. & W. 270), or a stage-coachmaij driving his coach (Sandiman v. Breach, 7 B. & C. 96), and when it was insisted that “ the calling of an attorney certainly comes within the spirit of the act,” Parke, B., replied that “ the spirit of the act can only be collected through the ordinary rules of construction,” and every judge expressing an opinion on the subject, held that the business of an attorney was not within the act. Peate v. Dicken, 1 C. M. R. 422, 428. In the English statute the prohibition against official acts on Sunday is found in section 6 ; in ours, in the provision against arrest on Sunday.
8. Other statutes make provision with respect to Sunday. Thus sporting, hunting, fishing and shooting on that day are prohibited. Eev. Stats. § 7032. So are shows. Eev. Stats. § 7032 a. So is convict labor. Eev. Stats. § 7427. So is the sale of liquors, with certain exceptions. 81 Ohio L. 204. And there are provisions as to days of grace, computing time, and the like (Eev. Stats. §§ 3176, 3177, 4951), all of which provisions show the regard entertained for Sunday, but they do not militate against anything I have stated.
9. It follows from the foregoing, irresistibly and necessarily, that a summons or notice served by a sheriff, coroner or constable on Sunday, is in Ohio lawfully served. In saying so we do not intend to intimate that such officer ought, ordinarily, to make such service on Sunday, or that he would be guilty of any breach of duty whatever by declining to make such service on that day. Nor are we to determine whether the law is right or wrong. "We have simply to inquire, what is the law ? and having ascertained that, declare the result.
10. When the citizen. receives a newspaper containing a ■legal notice, and reads such notice, the object which the legislature had in view is to that extent accomplished, and such publication is quite analogous to service of a summons. If the newspaper is mailed, the citizen commits no offense what *593 ever by receiving it at the post-office on Sunday, and reading it ; nor does he commit any ofíense by buying it on that day of the publisher, or a carrier, or newsboy, and reading it, however it may be with respect to an offense by the publisher, or carrier or newsboy. A Sunday newspaper is not an unlawful publication, and the fact that persons engaged upon it may have violated the statute against common labor, in preparing and circulating it, no more affects the legality of the notice, than the fact that the sheriff may have committed some offense at the time he served, a summons, would affect the legality of the service. In one case as well as the other, the service is, in fact, effectual in giving actual notice, and we see nothing in the common law or our statutes which would warrant us in holding that, such publication is illegal or invalid.' In so holding we express no opinion concerning the wisdom or propriety of permitting such publications on Sunday. That is a field which this court properly leaves to others. What we do determine is that the publications here in question are legal.
11. Counsel for the lot owners cite a number of cases, and we have added others, to the proposition that such publication in a Sunday newspaper is ineffectual. Chesapeake & O. Canal v. Bradly, 4 Cranch C. C. 193; Field v. Park, 20 John. 140; Scammen v. Chicago, 40 Ill. 146; Thomas v. Hindale, 78 Ill. 259; Smith v. Wilcox, 24 N. Y. 358; Ormsby v. Louisville, 20 Am. L. Reg. N. S. 269; Show v. Williams, 87 Ind. 158; Sterm’s Appeal, 64 Pa. St. 447. An expression here and there with which we do not agree, may be found in some of these cases ; but when the statutes upon which these decisions are based are carefully examined, it will be found that every case cited is in harmony with the conclusion we have reached.
12. But there is another view with respect to these publications which leads to the same result. Assuming such publication not to be in conformity to the statute, in other words, not the publication which the statute contemplated ; still, it appears that the newspaper containing the publications was one of general circulation throughout the city, and no claim *594 is made that the notice failed to reach any person who was interested in or affected.by the improvement. At most, then, such Sunday publication would be a mere irregularity, bringing the cases within the curative provisions of the municipal code of 1869, § 550; Rev. Stats. § 2289. Corner v. Jackson, 50 Alabama, 384.
II. In each of these assessments there were irregularities in the publication of ordinances in other than Sunday newspapers, and irregularities in other respects, which clearly and plainly bring the cases within section 550, above mentioned; but there is no such defect or want of power in either proceeding as to render the assessment wholly illegal and void; and the cost and expense of each improvement more than equaled the contract price.
III. At the time that the contract for the High street improvement was let, there was an old Nicholson pavement in the street, which by consent of the city, the contractors appropriated to their own use. The master finds its value to be $2,500. Regarding this as virtually a payment of $2,500 by the city to the contractors, the master properly deducted the amount from the sum for which the abutting owners are to be assessed in favor of the plaintiffs. What the rights of the city and the abutting owners inter se may be, we need not now determine. Moreover, the old pavement seems to have been used in making the new improvement. The same conclusion is reached with respect to the old Nicholson pavement in Town street.
IT. Objection is made that the master, in each case, deducted from the assessment the cost of a French drain, which those charged, on the part of the city, with the duty of superintending the work, found to be necessary, in order to make the improvement a good job. In deducting the amount of this expense from the assessment in the Town street case, the master erred, and he also erred in deducting the cost and expense of the'additional six inches in width to the Town street improvement, which was also found to be necessary to make a good job. The fact that the cost of these additions to the improvement exceeded $500, did not require any new *595 advertising or letting. In the Iiigb. street case the cost of the French drain was properly deducted, as the city had paid such cost to the contractors.
V. Objection is made that each of these improvements required a species of pavement which was patented ; that the contractors, in each case, owned the patent; and hence that there was no competition, and defendants cannot be assessed. But in each case, before there was any letting, the city had acquired the right to secure, at a reasonable cost, the right of such patent, with respect to this improvement, for any successful bidder for the work, and the bidders were placed by the city, in this respect, substantially on equal terms. We think the objection untenable.
VI. So far as the lot owners are concerned, the contracts should be construed as requiring an improvement so perfectly done, in the High street case, that it would remain in good repair seven years, and in the Town street case five years. To this there is no valid objection. In the High street case, parts of the improvement were so imperfectly done, that extensive repairs have been necessary, and others, at the time the report was filed, were to be made. Very properly, under the circumstances, the master deducted from the assessment the amounts expended and necessary to be expended, in order to make the improvement such as the contract requires. Creamer v. Bates, 49 Mo. 523. The case of Corry v. Campbell, 25 Ohio St. 134, does not interfere. with the right or duty of making such deduction. The effect of “ a substantial defect in the construction of the improvement,” was not the same when these improvements were made that it is now. See Stone v. Viele, 38 Ohio St. 314.
VII. The demurrers on the ground that the plaintiffs have not legal capacity to sue, is not well taken. The city seems to be a proper party defendant, and hence the propriety of the present form of action, and the petition, though general, is not so defective that, in view of the record before us, we feel warranted in holding it to be insufficient.
Other exceptions are relied on by the parties, but we will *596 not notice them in this report. There is no error in the record, except as already indicated.
In the High street case, all the exceptions to the master’s report are overruled and the report of the master is approved. In the Town street case the plaintiff’s exception to the master’s report with respect to French drain and the additional six inches in width in the improvement, are sustained, and all other exceptions to the report are overruled, and the report as thus modified is approved. And the causes are remanded to the district court for further proceedings.
JOHNSON, C. J., and Follett, J.. dissented as to the first proposition of the syllabus.