# J. YOUNG SCAMMON

*v.*

# THE CITY OF CHICAGO.

1. SUMMARY PROCEEDINGS *for divesting title—of the strictness required.* In summary proceedings whereby titles are divested, such as a proceeding to condemn real estate for non-payment of an assessment, the law under which they are instituted must be strictly followed as to all its substantial requirements.

2. SAME—*notice is important.* The above rule has especial application to notice which, in such cases, stands as process.

3. NOTICE *of filing assessment roll in the city of Chicago—its requisites as to time of publication.* The act of 1863, amendatory of the charter of the city of Chicago, requires notice to be given of the filing of an assessment roll " by six days' publication," etc. This means a publication for six different days.

4. SUNDAY—*publication of notice.* In publishing a notice required by law to be published six days, when one of the publication days occurs on Sunday, the publication on that day cannot be counted.

5. SUNDAY—*service of civil process.* In this State, civil process cannot be legally served on Sunday. It is forbidden by the one hundred and forty-fourth section of our Criminal Code, which prohibits any person from disturbing the peace and good order of society by labor, works of necessity and charity excepted.

6. SUNDAY NEWSPAPERS—*not regarded as belonging to the regular daily issue—publication of notice.* When the law requires a notice to be published in the corporation newspaper, its publication must appear in that particular paper. And when the newspaper so selected is a daily, and its proprietors also publish a Sunday paper of the same name, but which is not regarded as belonging to the regular daily issue, and delivered to its subscribers, but sold only to news-dealers and newsboys, such paper is a different and distinct one, from the corporation paper; and such notice cannot be legally published in such paper.

APPEAL from the Superior Court of Chicago.

Hon. JOHN M. WILSON, Chief Justice, presiding.

This was an appeal from a judgment upon a special assess-
ment made for curbing, grading, and paving with wooden block
pavement, Wabash avenue, from the south line of Randolph
street to the north line of Twenty-second street, in the city of
Chicago.

The opinion states the case.

Mr. J. L. THOMPSON, for the appellant.

Mr. S. A. IRVIN, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a proceeding to condemn certain lots in the city of
Chicago for failure to pay a special assessment levied upon.
them for the purpose of paving a portion of Wabash avenue..
This appeal is prosecuted from the judgment rendered against
the lots in the court below.

In summary proceedings of this character whereby titles are
divested, the law, under which they are instituted, must be
strictly followed as to all its substantial requirements.   This is
especially true in regard to notice, which stands in the place of
process.   Section 13, chapter 7, of the charter of Chicago as
amended in 1863, directs that, in these proceedings " notice shall·
be given by said commissioners, by six days' publication in.
the corporation newspaper, of the filing of such assessment
roll in the clerk's office; and that, at the next regular meet--
ing of the common council, to be held after the expiration·
of such publication, they will apply to the common council
for a confirmation of said assessment."

This unquestionably means a publication for six different
days, and has been so construed by the city.   In the case at
bar in order to make out the six days notice, it is necessary to
count a publication made on Sunday, July 6, 1865, and one of
the questions presented is, whether that publication can be
properly counted.

The validity of this notice is clearly just what it would have been, if the charter had only required one publication, and that had been made on Sunday. Would such a notice have been sufficient?

At the common law, Sunday was, in legal phrase, *dies non juridicus.* No valid judicial proceeding could be had upon that day. This rule of the common law was applied in this court in *Baxter* v. *The People,* 3 Gilm. 368, and a judgment rendered on Sunday pronounced absolutely void, though it was held in the same case a verdict might be received on Sunday as a matter of necessity.

But while the common law may only prohibit strictly judicial proceedings, it will hardly be contended that in this State civil process can be legally served on Sunday. In England this was forbidden by the 29 Car. 11, and in this State the same result would follow from the 144th section of our Criminal Code. That section is as follows:

" Any person who shall knowingly disturb the peace and good order of society, by labor or amusement on the first day of the week, commonly called Sunday (works of necessity and charity excepted), shall be fined," etc.

The unquestionable object of this law is, to secure to every individual in the community the right to pass the Sunday, either in religious exercises, or in the quiet and seclusion of his home, without liability to annoyance from the ordinary secular pursuits of life, except so far as they may be dictated by necessity or charity. The wisdom of this provision no one doubts. Although we have departed from the austere observances of the New England colonists, we have not drifted so far in the opposite direction as to recognize no distinction between Sundays and the other days of the week. The experience of the world has taught the necessity of setting apart one-seventh of our time for religious worship and meditation, and for complete repose from the harrassing and absorbing pursuits of gain, ambition and pleasure. Even those who are not guided by the teachings of Christianity, acknowledge the necessity of a rational observance of the Sabbath as conducive in the highest

degree to the temporal interests of society. While legislation prescribing the precise mode of its observance would be justly regarded as an unwarrantable interference with individual liberty, on the other hand all agree that no person should be permitted to follow his ordinary secular occupations, if, by so doing, he disturbs that portion of the community which desires to devote the day to religious worship and meditation. If the wise lawgiver, whatever may be his own religious opinions or habits, concurs in this setting apart one day in seven, it would ill become the judiciary to give to such enactments a restricted operation. They should be so construed as fully to accomplish their purpose, and we think it clear that to permit officers to intrude upon families on Sundays for service of civil process would be a violation of the spirit and policy of this law, and unbecoming a christian community. The case of *Johnson* v. *The People*, 31 Ill. 469, was decided on the express ground that the taking of a recognizance might be a work of both necessity and charity. This in no wise conflicts with the views we have here expressed.

If the service of civil process would be invalid on Sunday, it necessarily follows that a publication of this notice on Sunday, if the law required but a single publication, would be equally invalid, and the same rule must be applied to the present case, in which the Sunday publication must be counted to make out the requisite number. The notice stands in place of process, and it must be given on those days of the week which the law recognizes as appropriate to business of this character. To permit it to be given on Sunday is against the spirit and policy of our law. A large and most respectable portion of the community consider it immoral to issue Sunday newspapers, and, if these notices should be published in such papers only, property holders entertaining these opinions would have little chance of learning of the assessment.

There is another objection to this publication which has much force. It appears in the record that the Sunday Tribune is not distributed to the subscribers for the paper issued during the other days of the week. It is merely sold to newsboys and

news dealers for distribution. Although from the same office and bearing the same name as the ordinary daily Tribune, it is really a distinct paper. It must be regarded as a different paper by the publishers, or they would distribute it to their regular subscribers. The law requires the publication of the notice six days in the corporation newspaper. The corporation has selected the Chicago Tribune as its newspaper, but by that must be understood the Chicago Tribune which is published every day and distributed to its subscribers, and not a paper having no subscribers, and not considered by its publishers as belonging to the series of daily newspapers published under that name.

*Judgment reversed.*

BREESE, J.: I do not concur in this opinion.