Ormsby, &c., v. City of Louisville.

---

CASE 36—EQUITY—DECEMBER 14, 1880.

# Ormsby, &c., v. City of Louisville.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An allegation that the ordinances set forth in the petition "were in all respects published as required by law," is insufficient.

2. A publication of the levy ordinances of the city of Louisville on Sunday, and no other day, before seeking to enforce them, is not such a publication as the city charter requires or the law of this state approves. Sunday is not a judicial day, nor is it a day upon which any work, labor, or calling can be legally pursued, unless of necessity or charity. Such publication is of itself a violation of law, and no citizen, by any law of this state, is bound to read or take notice of it.

3. Before the contents of the two newspapers could lawfully be proven,. their absence should have been accounted for, either by proving. their loss or the inability of the appellee, after a *bona fide effort*, to· obtain them.

4. The fact that the notices required by the levy ordinances were pub--lished should have been distinctly alleged and proved.

5. The description and valuation of the lots sought to be taxed are· sufficient.

6. The plea of the statute of limitations as to the years 1869, 1870, and: 1871, is good.

R. W. WOOLLEY and GEO. DURELLE for appellants.

1. The petition does not contain a cause of action.   In a direct proceeding against a citizen to coerce the collection of a demand by the·sale of his property, it is material to allege and prove every essential step tending to establish the validity of the claim.   (Blackwell on Tax Titles, 500, 501, 502, 503, 504; 9 Miss., 878; Cooley on Taxation, 215; 40 Cal., 255; Kniper v. City of Louisville, 7 Bush, 599; Elliott's Dig., 153; act approved 20th March, 1876.)

2. Publication of the ordinances of the city of Louisville is required by the act of its creation before they can be enforced, and the mode of publication is pointed out.   A publication on Sunday is void. (Moore v. Hagan, 2 Duv., 438; 20 Johnson, 141; 6 *Ib.*, 326; 3 Penn., 200; 4 Cranch, 193; 16 Mich., 9; Scammon v. City of Chicago, 40· Ill.; Finch Law, 7; Noy's Legal Maxims, 2; 19 Vermont, 358; Prather v. Harlan, 6 Bush, 185; Campbell v. Young, 9 *Ib.*, 240; 12· Met., Mass., 25; 107 Mass., 441; 34 Maine, 391; 1 Grant Pa., 261; 24 Howard's U. S., 374; 19 Mich., 355; 1 Nott & McChord, 137; 32 Cal., 353; Dillon Mun. Corp., 266-7.)

H. M. LANE for appellee.

1. Section 107 of the charter of the city of Louisville operates to super--sede, within the limits of the city, the statute which makes penal· any work or business done on the Sabbath day.   (Cooley on Const.. Lim., 198; 54 Mo., 35; 1 Dutcher, 54; The State v. Davis (Texas), 2; 38 Mo., 456; 14 Bush, 525; *Ib.*, 224; 12 *Ib.*, 364; 9 *Ib.*, 521; Dillon Mun. Corp., 54; 3 Zabriskie, 484; 33 N. J. L. R., 57; 5 Dutcher, 170; 20 N. J. Eq., 360; 16 Pickering, 504; 18 Gratt., 176; 1 Vroom, 112; 2 Grant's Cases, 455; 12 Ill., 339; City of Louisville v. Commonwealth, 2 Duv., 296.)'

2. The publication of an ordinance is not a judicial act.

3. No contract is void simply because it is made on Sunday.   (9 Bush.,. 240; 6 Bing., 653; 13 Ind., 203; 19 Verm., 353; 24 *Ib.*, 317; 21 *Ib.*,. 99; 9 N. H., 500; 15 *Ib.*, 576; 3 Watts & Sergt.,.445;. 7 Bush, 221;. 97 Mass., 167; 1 Grant's Cases, 261.)

Ormsby, &c., v. City of Louisville.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

By section five of the charter of Louisville, approved March 3, 1870, it is provided that the proceedings of each session of each board of the general council shall be published at least once in one or more of the daily papers printed in Louisville having the largest permanent circulation in said city; and that "all ordinances shall be published in like manner before they are enforced."

By an amendment to the charter of March 3, 1871, section 10, it is provided that "it shall not be necessary for the city council to have published and printed the journal or proceedings of the general council, but all other matters required by the provisions of the charter or ordinances to be printed and published, shall be so printed and published in at least two papers in said city of Louisville having the largest *bona fide* circulation in said city, one of which shall be printed in the English, and the other in the German language."

It will be seen from these references that the annual levy ordinances are required to be published once in at least two newspapers of the largest *bona fide* circulation. Such ordinances are required to be adopted by the city council before taxes can be legally collected, as held in Boone v. Gleason, MS. Opin. of this court, 1879.

And we think the charter and amendment quoted make the publication of such ordinances a necessary prerequisite to their enforcement.

We have carefully investigated the authorities cited on all the questions presented for our consideration, and, without referring to all of them specifically, we will give the conclusions at which we have arrived, citing only such as we deem necessary to a correct understanding of this opinion.

The appellants demurred to the petition generally; their demurrer was overruled, and they excepted.

The petition makes no reference to the publication of the annual ordinances; but after the demurrer to it was overruled, the appellee filed a reply, in which it is alleged that "the plaintiff says that each one of the seven ordinances (*i. e.*, levy ordinances) set up in the petition, each entitled an ordinance concerning taxes, were in all respects published as required by law."

This mode of pleading a condition precedent in a contract was authorized by section 149 of the Civil Code of 1851; but that section was omitted from the Civil Code of 1877, and thereby the rules of pleading, as they existed before the Civil Code of 1851, in such cases, were revived, and the common law rule restored.

A statement of the facts, showing how and when a condition precedent was performed, or giving an excuse for its non-performance, was ordinarily required at common law. (Averbeck v. Hale, 14 Bush, 508, and authorities cited; Newman's Pleading and Practice, p. 333.)

The averment in the reply did not help the petition, because, to allege that the ordinances were in all respects published as required by law, is a legal conclusion.

The facts in regard to the publication should have been alleged, showing when and how the publication was made, and in what character of newspapers.

The court, therefore, erred in overruling the demurrer to the petition. As the plaintiff should be allowed to amend on the return of the cause, it becomes necessary to decide several other questions raised upon the record, which we proceed to do:

1st. A publication of the levy ordinances on Sunday, and on no other day, before seeking to enforce them, is not such a publication as the charter requires, or the law of this State approves. It is not a judicial day, nor is it a day upon which any work, labor, or calling can be legally pursued, unless of necessity or charity. Legal process cannot ordinarily be legally served upon Sunday, and there is no reason shown why the publication of an ordinance of the city of Louisville on Sunday should be held as a compliance with its charter requiring publication of such ordinance. The publication is a violation of law, and no citizen is bound by any law known to us to read secular newspapers on Sunday to entitle himself to the benefits which may flow from publications contained in them. If he chooses, he may refuse to read them on Sunday altogether, and none of his legal rights will be thereby forfeited.

2d. Before the contents of the newspapers, the Courier-Journal and Anzeiger, could be lawfully proven, their absence should have been accounted for either by proving their loss or the inability of the plaintiff, after a *bona fide* legal effort, to obtain possession or access to them. This is not a question of the existence of those papers, but as to their contents, and the best evidence of that fact of which it is susceptible should be adduced, and that evidence is furnished by the papers themselves.

3d. The levy ordinance for the year 1873, approved May 28, gave the assessor until June 10th to furnish to the city receiver the tax bills, and the ordinance for the year 1874 gave him until July 1 to perform that duty. By ordinance No. 482 all tax bills shall be due and payable on the first day of June of each year, and shall be listed in proper time with the receiver for collection. Ordinance No. 488 pro-

vided that notice should be published in at least three daily newspapers of the time at which taxes are due, and the place where the same will be received; and unless the notices by publication required by sections one and two of ordinance No. 488 are made at the time and in the manner therein directed, no percentage shall be charged. (Lucas' Digest, 264, 265.) There is no allegation in the petition or pleadings showing that such publication was made; and as the percentage is in the nature of a penalty, it cannot be recovered in this action, and it ought never to be allowed unless the law has been completely complied with by the city. Interest is not allowable upon taxes by way of damages.

4th. Section two of an act approved February 17, 1866, requires that the board of commissioners of taxes and assessments shall cause public notice to be given in two or more daily newspapers in said city, for a space of not less than thirty days, that the assessment rolls of all persons assessed for taxation in said city are then open for examination and correction.

The fact that such notice was published in the manner required by said section should have been alleged and proved.

But in counting the thirty days, Sundays will not be thrown out. The statute does not mean thirty secular days. It is like the service of a summons, which is required to be served ten or twenty days before the beginning of the term. Such service will be in time, although some of the days should be Sunday, provided the service shall not be made on Sunday.

This is very different from publishing the notice on Sunday. If the notice be published thirty days, provided the

Ormsby, &c., v. City of Louisville.

first publication is not on Sunday, which is requisite to make the thirty days, it is sufficient, although the publication is not made upon the intervening Sundays, which ought not to be done.

5th. If the assessor knows the property, or takes the assessment from the owner in person, he need not visit the property or take a view of it; and in this case we think that it is sufficiently shown that the property was known to the assessor.

6th. As to the description of the lots sought to be taxed, it is not as full as it might have been; but from the nature of his duties the assessor could not, without great delay and embarrassment, give such a description of the property as is required in a deed or judgment.

It would be unreasonable to require him to do so, and it would tend greatly to prevent the collection of taxes.

A simple tax-roll, laid off into proper columns for the names of the owners, a brief description of the property, its valuation, with appropriate headings, so that a person of ordinary understanding may know what is meant, and the property found on which the assessment is made, is all that is required in any state in the Union.

The number of feet front and depth of the lots, with the name of the street, and the side of the street on which they are located, also the names of the streets between which they are situated, are given, and we think the description sufficient.

7th. The valuation is set down on the roll in perpendicular columns, headed "value per foot," "value of ground," "value of improvements," and "total value."

The value at which the lots in question were assessed is placed under those heads on parallel lines running from left

to right of the roll opposite the names of the appellants and the description of the property, in Arabic numerals.

There is no mark or sign accompanying the figures indicating that they stand for dollars, other than the writing at the head of the perpendicular columns, as stated above.

We think those headings show that the figures stand for value of the property opposite which they are placed.

There is no decimal mark or sign separating the figures in any of the columns, except the one headed ''total value;'' and in that a line separates two figures from the left, leaving three on the right, showing that cents were not meant by those three figures, as two only are required for that purpose, and that dollars were certainly intended. Our tax laws require the property to be valued in dollars and cents, the terms commonly used in referring to money in this state.

If those figures do not mean value of the property, and in dollars likewise, what were they put there for? Our minds can conceive nothing else.

We are therefore of the opinion that the description and valuation are sufficient; but some mark representing dollars ought to be used in immediate connection with the figures to prevent trouble in the future.

The act of March 3, 1876, authorized the institution of the class of actions to which this belongs, and it was held to be constitutional, and construed in the case of Spradling v. City of Louisville, MS. Opin., 26 Nov., 1878. The plea of the statute of limitation was good as to the taxes of 1869, 1870, 1871.

Wherefore, the judgment is reversed upon the original appeal, and affirmed on the cross-appeal.

This opinion shall apply to the case of Robert Ormsby *et al.* v. The City of Louisville.

To a petition for a rehearing—

JUDGE HARGIS DELIVERED THE FOLLOWING RESPONSE:

The act establishing a board of commissioners of taxes and assessments for the city of Louisville, approved February 17th, 1866, has not been repealed, but was continued in force by an amendment of March 20th, 1876.

The only alteration made in the original act is the change of membership in the board.

Its provisions are necessary to secure correct assessments of property, and to protect the citizens against unjust, mistaken, or fraudulent assessments.

The city has the power under sections 8 and 107 of the act of March 3d, 1870, to *enforce* the observance of the Sabbath by penalties not less than that prescribed by the General Statutes; but it cannot abrogate the general law on the subject by refusing or neglecting to execute that power.

Some of the language of the opinion is modified. The petition and motion to extend the opinion is overruled.