Thomson, J.
This proceeding was instituted by Floras P. Dumars and a number of others, suing in behalf of themselves and all other persons similarly situated and interested, against the city of Denver, and its treasurer and ex officio collector, to obtain a decree annulling an assessment ordered by the authorities of the city against the real estate of the plaintiffs and the others, for the construction of a storm sewer; removing from the title of the plaintiffs the cloud occasioned by the assessment, and perpetually enjoining the defendants from enforcing it.
*377 The complaint alleged that the plaintiffs were all taxpayers and real estate owners in the sewer district; that the proceedings creating the district were had in pursuance of the charter of the city of Denver, enacted in 1893; that the enactment was void as being in violation of the constitution of the state of Colorado, and the constitution of the United States ; but that, conceding the validity of the charter, the board of public works and the city- council failed of compliance with its provisions in the following respects :
I. The ordinance creating the sewer district was not published in book or pamphlet form, and was not published at all, except once in the Denver Republican, on Sunday.
II. The bill authorized the expenditure of more than $5,000, and no advertisement, stating the general nature of the proposed expenditure, was ever made.
III. The board of public works did not, by advertisement for twenty days, in two daily newspapers of general circulation, published in the city of Denver, or otherwise, or at all, give notice to the owners of the real estate in the district, of the kind of improvements proposed; the number of installments, and time in which the cost would be payable ; the rate of interest on unpaid installments; the extent of the district to be assessed; the probable cost as shown by the estimate of the engineer ; the time, not less than thirty days after the first publication, when a resolution ordering the improvements would be considered by the board, showing that the map and estimates, and all resolutions and proceedings of the hoard, were on file, to be seen and examined at the office of the board during business hours, and stating that all complaints and objections that might be made in writing, concerning the proposed improvements, by the owner of any real estate to be assessed, would be heard and determined by the board before its final action.
The complaint also stated that the defendants were proceeding to the collection of the assessment against the plaintiffs by sale of the land belonging to them, and upon which the defendants alleged the assessment to be a lien.
*378 The defendants demurred to the complaint upon the sole ground that it did not state facts sufficient to constitute a cause of action. The demurrer.was sustained, and the complaint dismissed. The plaintiffs bring error.
An objection now taken 'to the complaint by the defendants, is that it is crowded with irrelevant and immaterial allegations. The ground of their demurrer was not that the complaint stated too many facts, but that it did not state enough; and if sufficient can be found in it to constitute a cause of action, that it contains, in addition, a mass of unnecessary matter, is inconsequential. Baum v. Holton, 4 Colo. App. 406. But the principal reasons urged for the defendants in support of the judgment, are thus stated in the printed argument of their counsel: “We think it very clearly appears from the foregoing synopsis of the complaint that if the allegations made are true, and certainly it does not lie in the mouth of the plaintiffs to deny the truth of any of them, then the proceedings complained of, and all laws purporting to authorize the same, are on their face unconstitutional and null and void, and are not sufficient even to create a cloud upon the title of the plaintiffs. For this reason the plaintiffs are not entitled to the interposition of a court of equity.” Counsel neglect to distinguish between the two separate and independent grounds upon which relief is sought, namely, the unconstitutionality of the law under which the proceedings were had, rendering them void upon their face; and, on the hypothesis of the constitutionality of the law, the failure of the city to comply with its provisions. Yet both of these grounds are relied upon by the plaintiffs, and each shall be subjected to examination.
Respecting the question of the effect upon title, of proceedings void upon their face, the authorities are not agreed; some affirming, and others denying, that such proceedings create a cloud, the removal of which is within the jurisdiction of a court of equity. But the distinctive features of this case render it unnecessary for us to be parties to that controversy; and, proceeding on the hypothesis that void *379 proceedings do not cloud title, we think a result can be reached concerning which all the cases are in perfect harmony.
While void proceedings cast no cloud upon title to real estate, and a single individual, moving only in his own behalf, and for his own purposes, to restrain such proceedings, will be remitted to his remedy at law, yet where a number of persons are similarly affected, and the rights of all may be adjusted in one proceeding, a court of equity will assume jurisdiction, notwithstanding there is no cloud to remove, and the ground of its jurisdiction is the prevention of a multiplicity of suits. Dows v. Chicago, 11 Wall. 108; Railway Co. v. Cheyenne, 113 U. S. 516 ; Heywood v. Buffalo, 14 N. Y. 534; Keese v. Denver, 10 Colo. 112; 1 Pomeroy’s Equity, §§ 260, 273.
The complaint in this case shows that a number of persons are affected by the same assessment, and that to determine their rights at law would require as many suits as there are individuals; and it also shows that while they have no common ownership in the property affected by the assessment, they have a community of interest in the questions of law and fact involved in the controversy; and upon authority so overwhelming as to he practically unanimous, the case is one peculiarity of equitable cognizance. See also Pomeroy’s Equity, § 269.
Defendants’ counsel refer us to Highlands v. Johnson, 24 Colo. 371, as announcing a contrary doctrine. Johnson brought an action against the city of Highlands to restrain the collection of an assessment against his land for the construction of a sewer, on the ground, among others, of a violation of the federal and state constitutions. The only allusion to this ground in the opinion, which was delivered by Mr. Justice Campbell, was the following: “ That a tax, or assessment, is void is not sufficient to justify the interposition of a court of equity to restrain its collection.” We have nowhere said that it is; and according to the view of the law which we have taken, it is not. The idea *380 which the learned judge intended to convey is more fully expressed in another opinion delivered by him, and reported in the same volume: “ That a tax is void is, of itself, not sufficient to justify the granting of a writ. The case must, in addition, be brought under the head of some of the well-recognized heads of equity jurisdiction.” Insurance Co. v. Bonner, 24 Colo. 220. The prevention of a multiplicity of suits is one of those heads. Not more fortunate is another of the defendants’ citations: Wason v. Major, 10 Colo. App. 181. Judge Wilson, delivering the opinion, specifically designated the prevention of a multiplicity of suits as one of the grounds of jurisdiction in equity.
But the position of our supreme court upon the questions under consideration is not equivocal, and the law applicable to them may be regarded as settled in this state. In Keese v. The City of Denver, 10 Colo. 112, where a number of parties united in a proceeding against the city of Denver, and certain of its officers, to enjoin a sale of their land in virtue of an assessment for the building of a sewer, and asking the same relief for all persons similarly situated, the decision was that upon the facts shown, the city council was not authorized to cause the sewer to be constructed, and was, hence, not authorized to levy an assessment to pay for its construction ; that the assessment was, therefore, void; and that, to the end that the rights of all persons interested might be determined in one suit, it was proper for the plaintiffs to sue for all others similarly situated and interested. The judgment of the court below dismissing the plaintiff’s bill of complaint was reversed. In 1893, the general assembly passed an act which, in terms, provided that when, by final decree of the court of appeals or the supreme court, any assessments made by the city of Denver for the construction of district sewers have been declared invalid in a direct proceeding to determine their validity, the city might, nevertheless, upon the passage of a resolution by the city council declaring the sewers necessary for sanitary purposes, assess the reasonable value of that portion of the sewers adjoining all lots in the district, *381 the assessments for which should remain unpaid, against those lots, with interest from the date of construction. This act is section 48 of article 7 of the present city charter. Session Laws, 1893, p. 219. The former assessments against certain property having been declared invalid in Keese v. Denver, supra, the city adopted the prescribed resolution, and caused the same property to be assessed for the payment of the reasonable value of the adjoining portion of the sewer. John Evans and a number of others, suing in their own behalf, and in behalf of all others similarly situated, brought their action in the district court against the city of Denver and certain of its officers, to restrain the collection of the assessment. Judgment was rendered for the defendants, and the case was appealed to the supreme court. That tribunal held that section 48 of article 7 of the act of 1893, being the present city charter, was repugnant to the state constitution and void, as operating retrospectively. The judgment below was reversed and remanded with instruction to the district court to enter a judgment enjoining the defendants from collecting the assessment. Evans v. Denver, 26 Colo. 193.
The question of the constitutionality of the law is not before this court. The decision of that question belongs to another tribunal. What I mean is, simply, that under proper conditions, equity will relieve against proceedings had pursuant to a statute which is in contravention of the constitution. But this case presents another feature, and to that I shall now direct my attention. The first ground for relief set forth in the complaint, is the invalidity of the proceedings, appearing on their face." The next ground is their invalidity by reason of matters aliunde. If the allegations of fact be true, then, conceding the constitutionality of the law, the city officials failed in the performance of duties prescribed by the statute, and prerequisite to jurisdiction. The facts invalidating the proceedings do not appear on the face of the record, so that those proceedings ar e prima facie regular and valid, and to avoid them, resort must be had to outside evidence. In order to a clear understanding of the situation, I *382 deem it well to set forth in full a few of the charter provisions, disregard of which by the city and its officials, is charged in the complaint. They are as follows:
ARTICLE 2, SECTION 8.
“No ordinance shall take effect until published in some newspaper of general circulation, published in the city of Denver, or in book or pamphlet form by authority of the city council.”
ARTICLE 2, SECTION 10.
“No bill granting any franchise or special privilege, and no bill or resolution authorizing the expenditure of more than five thousand dollars ($5,000) shall be passed until the expiration of at least one week from and after the introduction of the same ; nor until an advertisement has been made by the city clerk for at least five (5) days in some such newspaper, stating the general nature of the proposed franchise, privilege, contract or expenditure, as the case may be.”
ARTICLE 7, SECTION 3, PROVISO SECOND.
“ The board shall by advertisement for twenty days in two daily newspapers of general circulation, published in the city of Denver, give notice to the owners of .the real estate in the district, of the kind of improvements proposed, the number of installments and time in which the cost will be payable, the rate of interest on unpaid installments, the extent of the district to be assessed, the probable cost as shown by the estimates of the engineer, and the time, not less than thirty days after the first publication, when a resolution ordering the improvements will be considered by said board; that said map and estimate and all resolutions and proceedings of the board in the premises are on file, and can be seen and examined at the office of the board during business hours, at any time within said period of thirty days, by any person interested ; and that all complaints and objections that may be made in writing concerning the proposed improvements, by the owner of any real estate to be assessed, will be heard and *383 determined by the board before final action of thé board thereon.”
ARTICLE 7, SECTION 23.
“ In ordering the construction of district sanitary sewers, and all storm sewers, the board shall proceed as required in the first, second and fifth provisos of section three (3) of this article.”
We shall now inquire into the nature of these charter requirements, and the effect of their disregard.
I. As will be seen hereafter, district sewers for storm drainage must be authorized, and storm sewer districts prescribed, by ordinance; and no ordinance takes effect until published in some newspaper of general circulation, published in the city of Denver, or in book or pamphlet form, by authority of the city council. Without publication- by one of those methods, there was no ordinance. The question is whether the publication in question here, having been made on Sunday, was legal, or sufficient to give effect, or impart validity to the ordinance. In Schwed v. Hartwitz, 23 Colo. 187, it was held that publication of a notice of a tax sale was in the nature of service of process, and that where the publication was made onty on Sunday, the sale which followed it was void. As the publication of a notice of a tax sale was the only publication in the case, the court went into no general discussion of the question what the character or purpose of a publication must be to make it equivalent to service of process ; but among the cases to which it referred were two which we shall examine in order to deduce from them, and from the use made of them in the opinion, what the judgment of the court upon the question now under consideration would have been, if the facts of the case before it had rendered such judgment necessary. Hastings v. Columbus, 42 Ohio St. 585 ; Ormsby v. Louisville, 79 Ky. 197.
In Hastings v. Columbus, the plaintiffs, as contractors, sought to recover the amount of an assessment for an asphalt pavement against the owners of abutting lots. The *384 facts which gave rise to the question considered, as well as the question itself, are comprehensively stated in the following extract from the opinion : “ The record discloses the fact, and the alleged error is insisted upon by the defendants, that in the Town street case, the preliminary ordinance declaring the improvement to be necessary, was published in the Sunday Morning News, a newspaper published and circulated in Columbus on 'Sunday only, and that the notice was published in no other newspaper. The master finds that newspaper was at the time of general circulation in Columbus. It also appears that in the High street case, the ordinance providing for the improvement, and the assessment ordinance for one section of that improvement, were also published in that newspaper and no other. And it appears that at the time of these various publications, other newspapers, dailies and weeklies, were published and generally circulated in the city of Columbus on week days only.The municipal code of 1869, amended in 1870 (67 Ohio L. 71), and then in force, provided secs. 100, 103), among other things, that all ordinances ‘ providing for improvements shall be published in some newspaper of general circulation in the corporation ; if a daily twice, and if a weekly once, before going into operation. And no ordinance shall take effect until the expiration of ten days after the first publication of such notice.’ And that ‘ it shall be deemed a sufficient defense to any suit or prosecution, under any ordinance, to show that no such publication * * * as herein required, was made.’ The question whether such publication in a Sunday newspaper is a legal or valid notice being thus directly presented, we have bestowed upon it that care which its importance demanded, and will now state the result.” It appears also from the opinion that there ivas a statute in force in Ohio forbidding common labor on Sunday. As I shall have occasion for further quotation, I notice this as explanatory of an expression occurring later in the opinion. The court, after an elaborate examination of the common law and of the legislation in Ohio affecting the question to *385 be determined, announced its conclusion in the following language: “ It follows from the foregoing, irresistibly and necessarily, that a summons or notice served by a sheriff, coroner or constable, on Sunday, is in Ohio lawfully served. In saying so we do not intend to intimate that such officer ought, ordinarily, to make such service on Sunday, or that he would be guilty of any breach of duty whatever by declining to make such service on that day. Nor are we to determine whether the law is right or wrong. We have simply to inquire, what is the law ? and having ascertained that, declare the result.- When the citizen receives a newspaper containing a legal notice, and reads such notice, the object which the legislature had in view is to that extent accomplished, and such publication is quite analogous to service of a summons. If the newspaper is mailed, the citizen commits no offense whatever by receiving it at the post office on Sunday, and reading it; nor does he commit any offense by buying it on that day of the publisher, or a carrier, or newsboy, and reading it, however it may be with respect to an offense by the publisher, or carrier or newsboy. A Sunday newspaper is not an unlawful publication, and the fact that persons engaged upon it may have violated the statute against common labor, in preparing and circulating it, no more affects the legality of the notice than the fact that the sheriff may have committed some offense at the time he served a summons, would affect the legality of the service. In one case as well as the other the service is, in fact, effectual in giving actual notice, and we see nothing in the common law or our statutes which would warrant us in holding that such publication is illegal or invalid.”
It will be observed that the result reached by the Ohio court, and that reached by our own supreme court, differ. We find, however, that the seeming disagreement involves no principle. The conclusions are different, because the premises are different, but there is no conflict of opinion. Our court does not agree that the Ohio decision is contrary to its own, except apparently, and says that the entire reasoning of the opinion *386 is in favor of its own conclusion. It is, therefore, proper to ascertain what the Ohio court decided. The law was that all ordinances providing for improvements should be published in some newspaper, etc., and an ordinance adopted in conformity to that law was published only on Sunday. The character of that ordinance was similar to the character of this ordinance. The purpose of that was to provide for the improvement; the purpose of this to authorize the improvement; and requirements respecting the publication of one, would be applicable to the other. Throughout the entire opinion, the court calls the publication of such an ordinance, notice; and the decision was that because in Ohio the sheriff might lawfully serve a summons or notice on Sunday, notice might lawfully be published on Sunday; and that the violation of the statute against common labor, in preparing and circulating newspapers, had no effect upon the legality of the publication, it being in the nature of service of process, which was lawful. The importance of that decision to the present discussion consists in the fact that it places the .publication of an ordinance providing for a public improvement upon the same footing with service of process. If it had been the opinion of our supreme court that by the law of this state, publication of such an ordinance is not in the nature of service of process, instead of referring to the Ohio decision as being only apparently contrary to its own view, it would have simply said that the case was not in point. But instead of so doing, it designated the case as being based on a statute of Ohio, and expressly approved its reasoning.
In Ormsby v. Louisville, supra, the same question of the legality of a Sunday publication of an ordinance was considered. The charter of the city of Louisville provided that all ordinances of the city of Louisville should be published in at least two papers, having the largest bona fide circulation in the city. The court said: “ A publication of the levy ordinances on Sunday, and on no other day, before seeking to enforce them, is not such a publication as the charter requires, or the law of this state approves. It is not a judicial *387 day, nor is it a day upon which any work, labor, or calling can be legally pursued, unless oí necessity or charity. Legal process cannot ordinarily be legally served upon Sunday, and there is no reason shown why the publication of an ordinance of the city of Louisville on Sunday should be held as a compliance with its charter requiring publication of such ordinance. The publication is a violation of law, and no citizen is bound by any law known to us to read secular newspapers on Sunday to entitle himself to the benefits which may flow from publications contained in them. If he chooses, he may refuse to read them on Sunday altogether, and none of his legal rights will be thereby forfeited.” It may be thought that in the matter of compliance with the law, a distinction of some kind was recognized between levy ordinances and other ordinances ; but a careful examination of the language quoted will dissipate the supposition. It is true that the quotation begins with the terms “levy ordinances; ” but that expression, looked at in its connection, has no significance, because the ordinance before the court was a levy ordinance, and in commencing the discussion the court simply called it by its name. But the charter provision was confined to no class of ordinances, and the court confined its reason for holding the Sunday publication invalid, to no class of ordinances. The court refused to hold that the publication on Sunday, not of a levy ordinance, but of an ordinance, was a compliance with the charter; and said that the publication, referring to the publication mentioned immediately before, of an ordinance simply, and not of a levy ordinance, was a violation of law. What follows, as it seems to me, renders a misunderstanding of the court’s meaning impossible. The court says that no citizen is bound to read secular newspapers on Sunday, and that he forfeits no right by refusing to read them. If publication on Sunday of ordinances other than levy ordinances, had been considered legal, the language would not have been so sweeping. The court would have said that no citizen is bound to read publications of levy ordinances on Sunday, and would forfeit no rights by not do *388 ing so. But according to the court’s language, he loses nothing by not reading the paper at all, and it is immaterial what ordinance or other matter it may contain. Now the reason given by the court why the publication of an ordinance, not a levy ordinance, on Sunday is unlawful, is that process cannot be legally served on Sunday, and so, at last, the same result is reached as in the Ohio case, namely, that the publication of an ordinance is in the nature of service of process. Why did our supreme court cite in support of its opinion that the publication of a notice of a tax sale only on Sunday was illegal, a decision that the publication of an ordinance only on Sunday was illegal, unless it regarded the purpose and effect of the publication of an ordinance, and the purpose and effect of the publication of a notice of a tax sale, as the same ?
In Schwed v. Hartwitz, our supreme court also cited in support of its decision the case of Scammon v. Chicago, 40 Ill. 146. The question in that case concerned the legality of the publication on Sunday, of a notice of assessment in condemnation proceedings. The court held that the notice stood in place of process, and that its publication on Sunday was invalid, because service of process on Sunday would be invalid. The court, of course, confined itself to the subject before it. It decided the case with reference to the particular notice involved, and went into no general discussion of classes of notices. It rested its decision upon the following statutory provision: “ Any person who shall knowingly disturb the peace and good order of society, by labor or amusement on the first day of the week, commonly called Sunday, works of necessity and charity excepted, shall be fined,” etc. It is evident that the mere publication of a notice in a newspaper on Sunday would not necessarily disturb the peace or good order of society, and so the court applied the statutory provision to the case before it as follows : “ A large and most respectable portion of the community consider it immoral to issue Sunday newspapers, and if these notices should be published in such newspapers only, property holders en *389 tertaining these opinions would have little chance of learning of the assessment.” The foregoing language would include a legal publication of any kind. Persons refusing to read a Sunday newspaper would be as ignorant of an ordinance as of a notice of assessment which it might contain ; and from that language we see no escape from the conclusion that if the case before the Illinois court had been the case of the publication of an ordinance on Sunday, instead of what it was, the court’s decision would have been the same.
My apology for the space occupied in reviewing the foregoing authorities is the strong effort made in argument to avoid what I believe to be their effect. I can conceive of no publication required by law, the purpose of which is not to give notice of something to particular persons or to the public. The reason for the publication of an ordinance is that the public may receive notice of its provisions. Any notice which the law directs to be given is in the nature of process ; and its publication, when so required, is in the nature of service of process. The publication of the ordinance in question, being, in effect, the publication of a notice, was, according to the decision in Schwed v. Hartwitz, not such a publication as the law requires ; hence the ordinance never took effect, and all the proceedings which followed it were void.
II. I come now to a consideration of section 10 of article 2, and preface the discussion with the following further charter provisions:
ARTICLE 7, SECTION 2.
“ Whenever the board of public works shall by resolution order any of the local improvements herein mentioned, the same shall be authorized by ordinance; which ordinance shall be in form recommended by the board of public works by endorsement thereon, and shall not be subject to amendment by the city council.”
*390 ARTICLE 7, SECTION 20.
“ The board of public works may order the construction of district sewers for storm drainage for districts to be known as storm districts, the same to be prescribed by ordinance.”
The question to be settled is whether the ordinance required by sections 2 and 20 of article 7, is an ordinance authorizing the expenditure of money within the meaning of section 10 of article 2. While the board of public works may order local improvements, the improvements must be authorized by an ordinance. The order is ineffective without the ordinance. While the ordinance cannot be amended by the council, but must be adopted, if it is adopted at all, in the form recommended by the board, it is still subject in other respects to the rules prescribed for the enactment of ordinances ; and as no distinction is made between an ordinance for one purpose and an ordinance for another purpose, andas the words “authorizing the expenditure of more than five thousand dollars,” are unqualified, if the ordinance in question authorized the expenditure of more than $5,000, the advertisement required by section 10 of article 2 was essential to its validity. It is said that the complaint describes the ordinance as an ordinance authorizing the expenditure of more than $5,000, and that, as the demurrer admits that the allegation is true, it must be so accepted by us ; but the nature of the ordinance and the power of the city council in respect to it, are defined by the charter; and a provision embraced in it which the charter does not warrant, is null. No right to relief could be based on such provision, and a party asserting it could derive no benefit from an admission of its existence.
From a careful examination of the provisions of the city charter relating to local improvements, and, in the matter of their construction, to the division of power between the board of public works and the city council, I have reached the conclusion that the ordinance required by sections 2 and 20 of article 7, is not, and cannot legally be, an ordinance for the expenditure of money. Sections 35 and 36 of article 3 vest in the board of public works the exclusive management and *391 control of the construction of all public and local improvements. Section 7 of article 6 authorizes the city council to contract an indebtedness on behalf of the city, by borrowing money and issuing bonds of the city, for the purpose of constructing and maintaining public sewers. By section 40 of article 3, full, complete and exclusive authority is given the board of public works to expend for the city the proceeds of such bonds; and by the terms of section 42 of article 7, bonds and warrants issued in payment for local improvements, must be issued by the city treasurer upon the estimates and orders of the board of public works, approved by the mayor, without being audited by the city auditor or auditing committee, or allowed by the city council. The duty of the treasurer to issue the bonds and warrants, and of the mayor to approve the estimates and orders of the board, is mandatory. So that the issuance of the bonds and warrants, and their amount, are within the exclusive control of the board of public works. McMurray v. Hayden, 13 Colo. App. 51. In so far as public improvements are 'concerned, it is the board of public works only by which the expenditure of money is authorized; and the grants of authority to it, leave the city council without power in the premises. The ordinance required by sections 2 and 20 of article 7, is an ordinance authorizing the improvements ordered by the board of public works, and, when such improvements consist of district sewers for storm drainage, prescribing the storm sewer districts. When the council has authorized the work and prescribed the districts, its power is exhausted, and with the expenditure of the money required by the work, it has no manner of concern. It may be said that to authorize the improvement is inferentially to authorize the expenditure which the improvement renders necessary, but when all the charter provisions relating to the subject are considered together, the supposition becomes untenable. The council may say whether the improvement shall be made or not, and when it has said that the improvement may be made, — that is, when it has authorized it, — its work is done; all else is left to the board of public works.
*392 III. If the notice required by section 3 of article 7 was not published for twenty days in two daily newspapers of general circulation, published in the city of Denver, the board of public works was without jurisdiction or power to move further, and all subsequent proceedings were void. The allegation of failure to publish the notice is not specific, and is a clumsy piece of pleading; but it avers that the notice was not published for the necessary period. The requirements concerning the notice are jurisdictional. It must be given by the board of public works ; it must contain all the matters specified in the section providing for it, and it must be published for the requisite length of time. In the matter of authorizing and constructing public improvements by a municipality, the mode provided by the charter must be strictly pursued ; and any departure from the formula prescribed, vitiates all proceedings under it. Merritt v. Porchester, 71 N. Y. 309; Durango v. Pennington, 8 Colo. 257 ; Keese v. Denver, supra; Tifft v. Buffalo, 49 N. Y. Supp. 489 ; Carlyle v. Clinton, 140 Ill. 512; Moore v. Mayor, 73 N. Y. 238; Ogden v. Armstrong, 168 U. S. 224; Hawley v. Ft. Dodge, 103 Iowa, 573. Section 3 of article 7, after providing, among other things, that if, within the time specified in the notice we have been considering, a remonstrance against the making of the improvements subscribed by the owners of the majority of the frontage to be assessed, shall be filed with the secretary of the board, the proceedings shall cease, and shall not be renewed for six fiionths, concludes with the following provision: “ The finding of the city council by ordinance that any improvements provided for in this article were duly ordered after notice duly given, or that a petition or remonstrance was or was not filed as above provided, or was or was not subscribed by the required number of owners aforesaid, shall be conclusive in every court or other tribunal.” The last section of the so-called ordinance prescribing the sewer district, reads as follows: “ The city council finds that after notice duly given, the resolution of said board of public works of the city of Denver, creating said storm sewer districts, *393 and ordering the construction of storm sewers therein, was ■ unanimously adopted by said board of public works.” It is argued that the courts cannot go behind this finding, and that, therefore, omissions or failures in the previous proceedings are no longer available against the assessment. It is unnecessary to inquire into the meaning or intended effect of the statutory provision we have quoted, because there was no finding in accordance with its terms. The finding must be by ordinance. The finding I have quoted occurs in the so-called ordinance which, because of failure in its publication, never took effect. As has been already seen, it never became an ordinance; and the finding which it contained,' as well as all its other provisions, was nugatory. A similar finding was contained in a subsequent ordinance making the final assessment, but the invalidity of the first ordinance rendered all subsequent proceedings, including this last ordinance, void; and the finding was no better than the ordinance. Section 62 of article' 7, provides as follows: “No action or proceeding shall be commenced to review any proceedings, or acts, or to question the validity or enjoin the collection of the bonds, warrants or assessments authorized by this article, unless commenced within ninety (90) days after the passage of the ordinance making the final assessment.” As has been seen, it is my opinion that the ordinance making the final assessment was void. The council had no power to pass it. Not having been legally passed, it could not be the starting point of the period of limitation, and the section I have quoted is irrelevant to the case.
While the provisions of section 10 of article 2 are not applicable to the ordinance required by sections 2 and 20 of article 7, and the averment of failure of compliance with its terms in the passage of the bill and the publication of the required advertisement, would not entitle the plaintiff to the relief sought, and, on motion, would have been stricken out, matters were alleged, which, if true, would avoid the assessment. These matters do not appear on the face of the record. Prima facie, the proceedings were regular and valid, *394 and sufficient to create a cloud upon the title of the plaintiff, and to remove the cloud, the power of a court of equity was properly invoked. Speaking to this point in Ogden v. Armstrong, supra, Mr. Justice Shiras said: “ When the illegality or fatal defect does not appear on the face of the record, but must be shown by evidence aliunde, so that the record would make out & prima facie right in one who should become a purchaser, and the evidence to rebut this case may possibly be lost, or become unavailable from death of witnesses, or when the deed given on a sale of the lands for the tax would be presumptive evidence of a good title in the purchaser, so that the purchaser might rely upon the deed for a recovery of the lands until the irregularities were shown, courts of equity regard the case as coming within their jurisdiction, and have extended relief on the ground that a cloud on the title existed or was imminent.”
At the oral argument, it was maintained by counsel of the defendants that to entitle the plaintiffs to relief by injunction, it was incumbent upon them to pay or tender the amount assessed against them severally, and that the want of an allegation that they did so pay or tender, was fatal to the complaint. In answer to this contention, I quote the following from the opinion delivered by Mr. Justice Harlan, in Norwood v. Baker, 172 U. S. 269: “Mr. High, in his treatise on Injunctions, says that no principle is more firmly established than that requiring a taxpayer, who seeks the aid of an injunction against the enforcement or collection of a tax, first to pay or tender the amount which is conceded to be legally and properly due, or which is plainly seen to be due. But he also says : ‘It is held, however, that the general rule requiring payment or tender of the amount actually due as a-condition to equitable relief against the illegal portion of the tax, has no application to a case where the entire tax fails by reason of an illegal assessment. And in such case an injunction is proper without payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due, there being no valid or legal *395 tax assessed.’ The present case is not one in which — as in most of the cases brought to enjoin the collection of taxes or the enforcement of special assessments — it can be plainly or clearly seen, from the showing made by the pleadings, that a particular amount, if no more, is due from the plaintiff, and which amount should be paid or tendered before equity would interfere. It is rather a case in which the entire assessment is illegal. In such a case it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede, was the excess of cost over any benefits accruing to the property. She was entitled, without making such a tender, to ask a court of equity to enjoin the enforcement of a rule of assessment that infringed upon her constitutional rights.”
The complaint is amply sufficient, and the demurrer should have been overruled.
The judgment should he reversed.

Reversed.