·[No. 4487.]

THE CITY OF DENVER ET AL. V. DUMARS ET AL.

[No. 4486.]

THE CITY OF DENVER ET AL. V. HALLETT.

1. Cities and Towns—Storm Sewers—Assessments—Notice—Constitutional Law.

A city charter which requires the city clerk to give notice by publication to real estate owners of a storm sewer district, specifying that any complaints filed within a specified time will be heard and determined by the city council before the passage of any ordinance assessing the cost of a storm sewer against the property of the district, and which makes it the duty of the city council, sitting as a board of equalization, to hear and determine all such complaints before the assessment ordinance is passed, affords the owners a sufficient opportunity to be heard and offer testimony on the question of assessments.

2. Cities and Towns—Storm Sewers—Assessments.

In assessing the cost of a storm sewer against the real estate of the district, a charter provision which requires the cost to be assessed upon all the real estate of the district in proportion as the area of each piece of real estate in the district is to the area of all the real estate in the district, exclusive of public highways, is valid.

3. Cities and Towns—Public Improvements—Notice—Constitutional Law.

The provision of a city charter authorizing the assessment of the cost of public improvements against the real estate specially benefited, is not unconstitutional because it fails to specifically provide that the city authorities shall give notice to the property owners of the time and place their complaints and objections will be heard, as the city authorities would have power to provide for such notice, if the owners are entitled to notice, without a special charter provision therefor.

4. Same.

Where a city charter provided that the finding of the city council by ordinance that any public improvements authorized by the charter were duly ordered after notice duly given, should be conclusive in every court or other tribunal, and an ordinance by the city council creating a storm sewer district made such finding, the question as to whether the preliminary notice required by the charter to be given to property owners, was given as required, cannot be inquired into by the courts.

5.  **Cities and Towns—Public Improvements—Ordinance—Publi-
    cation on Sunday.**

The fact that an ordinance creating a storm sewer district
was published on Sunday, would not invalidate the ordinance.

6.  **Cities and Towns—Public Improvements—Special Assess-
    ments—Jurisdiction.**

Where a city charter confers upon the city authorities power
to make public improvements and to assess the cost against real
estate specially benefited, with jurisdiction to determine the
question of benefits inuring to property, and the property owners
of a storm sewer district failed to file with the city council any
protest or objection to the assessment of their property as fixed
by the council, they were not entitled to be heard in court, in
an action to invalidate such assessment, to assert that their
property was not benefited but injured by the improvement, and
it was error for the court to hear testimony tending to establish
such claim.

7.  **Same.**

Where the property owners of a storm sewer district made
no objections before the city council to the assessments on their
property, on the ground that property within the district was
excluded from the assessment that should have been included,
such question cannot be raised in the courts in an action to
invalidate the assessments.

8.  **Cities and Towns—Public Improvements—Contracts—Lowest
    Bid—Discretion—Fraud.**

Where a city charter provides that all contracts for public
improvements shall be let to the "lowest reliable and responsi-
ble bidder," the city authorities are not bound to award the con-
tract to the lowest bidder, but may exercise their judgment
and discretion as to the reliability and responsibility of the
bidders, and such discretion will not be interfered with by the
courts, in the absence of fraud or bad faith.

*Appeals from the District Court of Arapahoe
County:*

*Hon. Booth M. Malone, Judge.*

Mr. H. M. ORAHOOD and Mr. H. L. RITTER, for
appellants.

Mr. JOSHUA GROZIER and Mr. W. C. KINGSLEY,
for appellees.

Chief Justice Gabbert delivered the opinion of the court.

The questions presented by these two appeals are practically the same, and for this reason they will be disposed of in one opinion.

The purpose of the actions brought by the respective appellees was to annul assessments levied against their property for the purpose of paying for the construction of a storm sewer in what is known as Broadway Storm Sewer District No. 1. Plaintiffs obtained a judgment in their favor, from which the respective defendants appeal. The questions presented are:

1. The constitutionality of charter provisions relating to the construction of storm sewers.

2. The sufficiency of the notice given by the board of public works.

3. The validity of the publication of the ordinance creating the district.

4. The rights of plaintiffs to litigate the question of special benefits.

5. The effect of the omission of certain property in the district.

6. The claim that the contract was not let to the lowest responsible bidder.

1. In discussing the constitutionality of the charter provisions the following propositions, not determined or referred to in *City of Denver v. Kennedy, ante,* are presented:

(1) Are owners afforded an opportunity to be heard and offer testimony on the question of assessments?

(2) Is the rule prescribing the method of assessment valid?

(3) Is the notice prescribed sufficient?

Before an assessment against property can be made for the construction of a storm sewer, the city

clerk is required by advertisement to notify the owners of real estate to be assessed, which notice, among other things, shall specify that any complaints made in writing by the owners and filed within a specified time, will be heard and determined by the city council before the passage of any ordinance assessing the cost of the sewer against the property in the district.—Sec. 30, Art. 7 (Sec. 187), Charter. The charter also makes it the duty of the city council, sitting as a board of equalization, to hear and determine all such complaints and objections before the assessment ordinance is passed.—Sec. 31, Art. 7 (Sec. 188), Charter. Certainly, under such a provision as the latter, although it does not enter into details, the law contemplates that the tribunal designated to hear and determine such complaints and objections as may have been filed against the assessments shall hear the parties complaining, and such testimony as they may offer in support of their complaints and objections as would be competent and relevant.

In apportioning special assessments the rule prescribed or adopted is not objectionable, though arbitrary, if it appears that by the method prescribed or followed, the special benefits accruing to the property by reason of the improvement for which it is assessed will secure an assessment in proportion to the benefits as nearly as practicable.—*City of Pueblo v. Robinson,* 12 Colo. 593. In assessments of this character, absolute equality is not to be expected. A reasonable approximation is all that can be required, and when the proper body prescribes, in good faith, a method by which this end may be attained with reasonable certainty, it should not be disturbed. The charter provides that the cost of a storm district sewer shall be assessed upon all the real estate in the district in proportion as the area of each piece

7

of real estate in the district is to the area of all the real estate in the district, exclusive of public highways.—Sec. 21, Art. 7 (Sec. 178), Charter. The purpose of a storm sewer is to carry off flood waters. Each lot in the district is benefited by being relieved from the dangers and damages which may be occasioned from storm waters, more or less common to the district in which it is situate. Each tract ordinarily augments the aggregate volume of storm waters in a district, in the proportion that its area bears to the entire area of lots in the district. The rule prescribed, therefore, appears to *prima facie* approximate the extent of the benefits accruing to each lot by the construction of a storm sewer. Such seems to be the view adopted generally by the courts, to the effect that area is regarded as a just means of apportioning the special benefits in case of sewers.— Elliott on Roads and Streets, Sec. 560.

It is argued by counsel for appellees that the charter provisions are unconstitutional because they do not provide for notice to owners of the time and place when they may be heard on such questions as it would be proper for the city authorities to consider before their property is assessed with the expense of a local public improvement. Sec. 30, Art. 7, heretofore referred to, is certainly sufficient notice to owners to file their complaints and objections within a specified time. Whether or not the charter should further specifically provide for a notice to owners filing complaints and objections of the time and place when such complaints and objections would be heard and determined, is the important question. If they are entitled to such notice (a point, however, which we do not decide), then the city authorities would unquestionably have the power to provide therefor, and the charter is not unconstitutional, because it does not specifically make provision for

such notice.—*Paulson v. Portland,* 149 U. S. 30; *Gatch v. City of Des Moines,* 63 Iowa 718; *Gilmore v. Hentig,* 33 Kan. 156.

The contention that the charter provisions are unconstitutional because the action of the city council sitting as a board of equalization in hearing and determining complaints, is not final, will be determined in the case of *City of Denver v. Londoner, post,* p. 104, now under consideration. The constitutionality of the law creating the board of public works is also determined in that case.

2. The notice given by the board of public works was attacked because of the omission therefrom "that all complaints and objections that may be made in writing concerning the proposed improvements by the owners of any real estate to be assessed, will be heard and determined by the board before final action of the board thereon." The charter provisions on the subject of what shall be contained in a preliminary notice given by the board designates that it shall contain that above quoted. It is claimed by counsel for appellants that in the creation of storm sewer districts this recitation in the notice is not required, and may be omitted. Whether or not this claim is correct or whether, generally speaking, the notice should contain that which was omitted, is immaterial. Sub-section 8, Sec. 3, Art. 7 (Sec. 160), Charter, provides: "And the finding of the city council, by ordinance, that any improvements provided for in this article were duly ordered after notice duly given  *  *  *  shall be conclusive in every court or other tribunal." In the ordinance creating the district in accordance with the recommendation of the board of public works after the publication of the preliminary notice, it is recited: "That the city council finds that after notice duly given, the resolution of said board of public works

of the city of Denver, creating said storm sewer district, and ordering the construction of storm sewers therein, was unanimously adopted by said board of public works.'' There is no requirement of law other than the charter provision referred to, which renders it necessary for the board of public works to publish the preliminary notice of intention to create a storm sewer district. The hearing accorded owners of property in the district by virtue of this notice is not final or conclusive. No assessment is made thereunder. Opportunity is still afforded the owner to be heard, before the passage of an ordinance finally fixing the assessments on the property in the district. He is, therefore, deprived of no fundamental rights by virtue of the authority vested in the city council to make its finding on the sufficiency of the preliminary notice by the board final and conclusive. It was the purpose of the law, in making this provision, to empower the city council to finally set at rest the regularity of certain preliminary steps taken by the board in the creation of the district, including that of giving notice. In effect, action thereunder is curative in its nature, and was intended to prevent irregularities which deprived owners of no constitutional rights from invalidating the proceedings of the board. When the irregularity of a proceeding consists in the mode or manner of doing some act which might have been made immaterial by a prior law, it is equally competent to make the same immaterial by subsequent law. —Cooley on Const. Limitations, 457; *City of Clinton v. Walliker,* 98 Iowa 655.

The legislature has the authority, so long as constitutional rights are not invaded, to provide in special proceedings what questions may be tried by the courts, and what not.—Elliott on Roads and Streets, 2d ed., sec. 593. As before stated, there

is no constitutional provision requiring the giving of the preliminary notice by the board. It is purely statutory, and might have been dispensed with in the first instance. The notice which the charter requires shall be given by the city clerk and the proceedings in accordance therewith, afford the owners full opportunity to be heard on the question of assessments against their property, and it is, therefore, competent for the legislature to empower the city council to conclusively determine the sufficiency of the preliminary notice given by the board.

3. The ordinance creating the district was published on Sunday. This did not render it invalid. It was in no sense process. It did not require the owners of property in the district to appear at any time or place to defend against any matter to which it referred.—*Dumars v. City of Denver,* 16 Colo. App. 375 (395). For this reason *Schwed v. Hartwitz,* 23 Colo. 187, is not applicable. It was there held that the notice published on Sunday was in the nature of the service of process; but, as stated, the ordinance creating the district was not.

4. So far as discussed, the charter provisions under which the city authorities acted are constitutional, and no irregularities in the proceedings have been pointed out which would affect their validity. For this reason we conclude that the city authorities had jurisdiction to take the several steps they did, which finally resulted in an assessment of which plaintiffs complain. It appears that they never filed any protest or objection with the city council; hence, that body was never given an opportunity to pass upon the question of benefits inuring to the property of plaintiffs by reason of the construction of the sewer. Plaintiffs now claim that their property was not, in fact, benefited, but, rather, injured. Testimony tending to establish this claim was received

by the court below. This was error. The law afforded the plaintiffs an opportunity to be heard before the city council touching the question of benefits inuring to their property before the assessment was 'made. They have failed to take advantage of this opportunity or call to the attention of the city authorities in apt time the claim that their property was not benefited. For this reason they will not be permitted to litigate in a court the question of benefits. The owner must avail himself of the opportunity afforded to appear and make his objections to special assessments in the special form which the law provides for that purpose; otherwise, he will. not be heard to object in any other forum.—*Town of Tumwater v. Pix*, 51 Pac. (Wash.) 353; *City of Greenburg v. Zoller*, 60 N. E. (Ind.) 1007; *McNamee v. City of Tacoma*, 64 Pac. (Wash.) 791; Beach on Public Corporations, sec. 1123.

5. According to the assessment ordinance and the preliminary steps, the streets and highways in the district were excepted. There was also excepted certain property along Broadway. Some of the streets in' the district are traversed by street car tracks. No assessment was made against this property. That property in an improvement district is improperly excepted from bearing its proportion of the cost of a local improvement can no doubt be raised if parties affected present the question in apt time. Where, however, as in this instance, no question is raised with respect to the exception until after the completion of the work, and no effort made to have the city authorities act upon that matter, it is too late to raise the question in the courts. The omission of lots from an assessment does not make the entire assessment void.—*O'Dea. v. Mitchell*, 77 Pac. (Cal.) 1020. The most that plaintiffs. could claim is, that if property was improperly excluded

which should have been included, then such exclusion would result in imposing upon the property assessed an unjust burden, to the extent of the amount which should have been assessed against the excluded property. This matter should have been called to the attention of the city council by filing objections, and thereafter presenting them to that body, sitting as a board of equalization. The plaintiffs failed to invoke the remedy provided by statutes, and are, therefore, not now in a position to assert alleged rights which could have been secured by that remedy.

6. In providing for the letting of contracts for the construction of local improvements, the charter provides:

"All such contracts shall be let to the lowest reliable and responsible bidder, after public advertisement by the board for not less than ten days, in some newspaper of general circulation published in the city of Denver. Any other mode of letting such contracts shall be illegal and void."—Sec. 46, Art. 7 (Sec. 203), Charter.

Appellees pleaded and attempted to prove that the contract was not let to the lowest responsible bidder. Fraud is not charged. It is clear from reading the provision of the charter quoted, that it was the purpose to inhibit the city authorities from letting contracts except after published advertisement, and the provision that any other mode should be illegal and void refers to the method which the city authorities were required to follow in securing bids on contracts, i. e., by publishing a notice, and nothing more. Aside from this consideration, however, the charter requires the city authorities to exercise their judgment and discretion in letting a contract to the lowest reliable and responsible bidder. In other words, the lowest bid does not control abso-

lutely, but the reliability and responsibility of the bidder must also be taken into consideration. The exercise of this discretion cannot be interfered with by the courts in the absence of proof of fraud or bad faith.

The judgment of the trial court should have been for the defendants. The judgment of that tribunal is, therefore, reversed, and the cause remanded with directions to enter judgment for the defendants.

*Reversed and remanded.*