CASE 61—PETITION—SEPTEMBER 19.

# City of Covington, &c., vs. Casey, &c.

APPEAL FROM KENTON CIRCUIT COURT.

To authorize the city council of Covington to apportion the expense for work done on a street, and allow a lien upon the lots fronting on such street, the ordinance directing such work to be done must have been enacted on the petition of the owners of the larger part of the ground between the points to be improved, or by the unanimous vote of all the members elect of the council, as provided ·in the amended charter of February 3, 1864. The judgment exonerating the lot-owners, and the judgment against the city, are both affirmed.

R. A. ATHY,
L. E. BAKER, and
J. F. & C. H. FISK,                    For Appellants, .
                    CITED—
    *Session Acts* 1849–50, *p.* 239.
    *Session Acts* 1863–4, *p.* 306.
    *Session Acts* 1859–60, *vol.* 2, *p.* 632.
    18 *B. Mon.*, 41; *Frankfort Bridge Co. vs. Frankfort.*
    4 *Dana,* 154; *Keasy vs. Louisville.*
    *Session Acts* 1865, *vol.* 1, *p.* 412.

City of Covington, &c., vs. Casey, &c.

PRYOR & CHAMBERS,                                     For Appellees,

CITED—

Charter of Covington of March 2, 1850, and secs. 1, 2, of Act of Feb. 3, 1864, pp. 8, 9, 10, 54, 55, 56, 64, of the published charter and ordinances of City of Covington.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Hovekamp, having done certain work on a street in the city of Covington, the city council apportioned the expense, and allowed a lien upon the lot-holders fronting the street, which they resisted, and, on suit by Hovekamp against them and the city, the chancellor decreed their exoneration, but gave judgment against the city, which she seeks to reverse.

Two main questions are presented for our consideration:

1. Whether the ordinance authorizing the improvement was so enacted as to bind the lot-owners?

2. Whether the subsequent proceedings were of a character to bind them?

The solution of the first question depends upon whether the amended charter of the city, approved February 3, 1864 (Session Acts, 306), or the original charter of March 4, 1850 (Session Acts, 239), is to govern this case.

By section 1, amended charter of 1864, it is enacted, "that the city council shall have full power and authority to procure all the streets, alleys, market-spaces, and lanes in said city to be improved, re-improved, or repaired, in whole or in part, in any manner they may deem advisable, at the expense and cost of the owners of the property fronting the same; * * * * * and to do, or cause to be done, either, any, or all of said kinds of improvement with bowlders, or any other sort of stone, at the expense

and cost of the owners fronting on such *streets, alleys, market-spaces, public squares, or ground or lanes.* And a *petition in writing* to the said council *of the owners* of the *larger part of the ground between the points to be improved,* * * * *shall be sufficient to authorize* the said council to contract for *either, any, or all* the above mentioned *kinds* of improvements: * * * *Provided further,* That the said council, *by a vote of all the members elect,* may cause any *street,* &c., * * to be *improved as aforesaid,* at the cost and expense of the owners, * * *without petition or consent.*"

The authority first conferred is to *improve, re-improve,* or *repair,* and all the subsequent reference by the words "said improvements," or "said kind of improvements," referred to the unlimited authority to improve, re-improve, or repair, as well as the manner of making said improvements, re-improvements, and repairs, classing all these as improvements.

This authority, however, could only be exercised upon the proper petition of the owners, or the unanimous vote of the entire membership elect; nor do we conceive that the limitations upon this power were at all modified by the second section of said amended charter; the object of this section was to authorize the city council to control and have the work done in a different manner, by employing hands, or by private contract, &c., instead of advertising and receiving bids; but the authority to have the work done in any manner, must depend on the proper petition of the owners of lots fronting the street, or on the unanimous vote of all the members elect, else the lot-owners could not be compelled to pay the expense; nor does the second section of the amended charter of 1865 (1 *vol., Session Acts* 1865, *p.* 412), at all alter the conditions upon which the power to bind the property-holders depend, but refers to subsequent irreg-

City of Covington, &c., vs. Casey, &c.

ularities when the original ordinance has been legitimately enacted. These safeguards are placed around the property-holders to preserve them from an undue exercise of a very omnipotent and dangerous power over their property and fortunes, and should be rigidly adhered to.

From this view, when the powers conferred have been strictly adhered to in all its precedent conditions, there is no escape, the owner's liability being fixed without his consent, without notice of any sort to him, and without any hearing on his part; therefore, courts should not relax the safeguards, feeble and impotent as these are, thrown around the citizen against this power so comprehensive and often so detrimental to his interest.

We are satisfied, that, whether the improvement, re-improvement, or repair made, be referred to the first or second section of this amended charter, the authority to make it depends on the petition of the owner, or the unanimous vote of the entire elected membership of the council; also, that the amended, and not the original charter, should govern the case. As the ordinance authorizing this work was not enacted at the instance of the property-holders, nor on the unanimous vote of all the members of the council, it was insufficient to fix the liability of the lot-owners; and this being the case, it is useless to investigate the other proposition, whatever may be our impressions as to the power of a corporation to contract by parol, unrestrained by municipal law. Whether such contract can bind the property-owners so as to create a lien, may be subject to considerations not now necessarily involved, and therefore not decided.

The judgment exonerating the lot-owners, as well as the judgment in favor of Hovekamp against the city, was correct; and, therefore, both are affirmed.