KEESE ET AL. V. CITY OF DENVER.

1. Grants of powers to make local assessments are strictly construed and must be strictly followed.

2. A subsequent statute, revising the whole subject-matter of a former statute, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate as a repeal of the former.

3. It is a general rule applicable to the corporate authorities of all municipal bodies, that when the mode in which their power on any given subject can be exercised is prescribed by the charter, the mode must be followed. The mode in such cases constitutes the measure of power.

4. An assessment under the statute authorizing the cost of sewers to be levied against property in a district according to area and not based upon value, benefits or improvements, *held* to be a valid assessment under the police power.

5. An objection that the assessments were not made by the city assessor as required by the charter, *held* to be an objection going to an irregularity that in no way affected the tax-payer.

6. The rule that one or more plaintiffs may bring suit in equity for the benefit of all others similarly situated or interested is well settled. Equity will assume jurisdiction in such cases to avoid a multiplicity of suits.

STALLCUP, C., dissenting.

## *Appeal from District Court, Arapahoe County.*

THOMAS KEESE and seven others, plaintiffs, tax-payers of the city of Denver, filed a complaint to enjoin the sale of lands owned by them under an assessment for the building of a sewer, against the city of Denver and some of its officers, defendants. Judgment for the defendants, and plaintiffs appealed.

Messrs. MARKHAM and DILLON, for appellants.

Messrs. ROGERS and CUTHBERT and J. F. SHAFFROTH, for appellees.

RISING, C. This action was brought by the plaintiffs to restrain the sale of real estate described in the complaint, for the purpose of collecting an assessment placed thereon to pay for the construction of a sewer, constructed under the direction of the city council of the city of Denver. There are seven plaintiffs, and each has a separate interest in distinct portions of said real estate, and there is no joint interest of any of the plaintiffs in any portion of such real estate, and the same relief is asked for all other persons similarly situated and interested as for themselves. Demurrer to complaint for defect and misjoinder of parties plaintiff, and that complaint does not state facts sufficient to constitute a cause of action. Demurrer

overruled, and, upon trial, judgment dismissing bill of complaint, from which judgment plaintiffs appeal.

There is no conflict in the testimony, and the objections urged against the validity of the sewer assessments, and appellees' answer thereto, are based upon the provisions of the charter of the city of Denver, approved April 16, 1877, and an amendment thereto approved February 19, 1879, and upon the following facts: On January 5, 1880, the council passed an ordinance adopting the system of drainage and limits of districts as shown on map of sewer districts prepared by the city engineer, so far as the same applies to district No. 2, as the system of sewers for said sewer district No. 2. On May 6, 1880, the following communication from the board of health was presented to, and adopted by, the city council: "Gentlemen: In accordance with the authority given to the board of health in section 3 of an act passed February 9, 1879, entitled 'An act to enable the city council to establish a system of sewerage,' we respectfully recommend as a sanitary measure the construction of district sewers as provided by ordinance. We further recommend that the district sewer on Sixteenth street be constructed this year from the main sewer on Wyncoop street to Curtis street; also that district sewer on Eighteenth street be constructed this year from the main sewer on Wyncoop street to Lawrence street." An ordinance establishing the Thirteenth-street sewer district, and providing for the construction of a sewer therein, was passed by the city council, and approved by the mayor, on the 6th day of March, 1882, and was duly published. A majority of the property holders resident in said district did not sign a petition for the construction of said sewer, but said ordinance recites that it is enacted "in accordance with the petition of the citizens" in said district. On July 5, 1883, the city council, by resolution, instructed the city engineer to compute the total cost of the sewer, including interest on warrants

already issued up to January 1, 1884, and including the cost of collecting the assessments; and on September 6, 1883, the city engineer reported to the city council the total cost of the sewer to be $113,016.80, which report was adopted, and on the same day the city council, by resolution, instructed the city engineer to make a plat-book of said sewer, and report the same to the council for approval. On October 8, 1883, the city engineer presented to the council a book of plats, showing the area and tax of each lot or parcel of land in said sewer district, and the council by resolution adopted the assessments of sewer tax against lots and parcels of land in said district, as shown in said book of plats, subject to such changes and equalization as might thereafter be made by action of the council, and resolved that a committee of three be appointed as a board of equalization to hear and adjust complaints as to the assessment of sewer tax made against property in said district, and appointed as such committee, C. Gove, G. N. Billings, E. P. McPhilomy. Due notice of the time and place of the meeting of this committee was given, and the committee sat for five consecutive days, and on the 20th day of October, 1883, reported to the council that no complaints had been made as to the legality of the assessment or its manner of make-up, and recommended that the estimate of the engineer be made the assessments, and the lots assessed as per the accompanying abstract. On the same day the following resolution was adopted by the council: " Resolved, that the lots and parcels of lots mentioned in the abstract of lots and assessments accompanying the report of the committee be assessed at the sums therein mentioned, and that the abstract and plats be forwarded to the county clerk and recorder of Arapahoe county, with instructions to extend the assessments with other taxes upon the lots and parts of lots therein mentioned." The contract for the construction of said sewer was let on the 30th day of March, 1882.

All the questions presented by the briefs of counsel are raised by the issues made by the pleadings. The ordinance of March 6, 1882, for the establishment of the Thirteenth-street sewer district, and the construction of a sewer therein, recites that it was enacted in accordance with the petition of the citizens in said district. In their argument, counsel for appellants first attack the validity of the tax or assessments, upon the ground that the petition for the establishment and construction of said sewer was not signed by a majority of the property holders resident in said district, and that the board of health did not recommend the construction of such sewer, and that no recommendation of the board of health was approved by the city council. These objections are based upon the provisions of section 3 of the amendment to the city charter, approved February 19, 1879, which provisions are that "the city council shall cause sewers to be constructed in any district, whenever a majority of the property holders resident therein shall petition therefor, or whenever the board of health recommend the same as necessary for sanitary reasons, and said recommendation is approved by the city council." The evidence clearly shows that a majority of the property holders, resident in said district, did not petition for the construction of said sewer. To authorize the city council to act, under the provisions of said amendment, there must be a petition of property holders, or a recommendation of the board of health, as required by section 3, and a petition not complying with the requirements of said section did not authorize the council to act thereunder. The grants of powers to make local assessments are strictly construed, and must be strictly followed. *Merritt v. Portchester*, 71 N. Y. 309; *Allen v. Galveston*, 51 Tex. 302. Every material requirement of the charter must be strictly complied with before there can be any liability of adjoining lots for such work. *Massing v. Ames*, 37 Wis. 645; *Pound v. Chippewa Co.* 43 Wis. 63; *Columbus v.*

*Story,* 35 Ind. 97; *Covington v. Casey,* 3 Bush, 698; *In re Sharp,* 56 N. Y. 257; *Kyle v. Martin,* 8 Ind. 34.

The general rule is laid down by Judge Dillon in his work on municipal corporations (section 800), and is as follows: "Where the power to pave depends upon the *assent or petition of a given number or proportion* of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect, conclusive; and the want of such assent makes the whole proceeding void, and the non-assent may be shown as a defense to an action to collect the assessment, or may, it has been held, be made the basis for a bill in equity to restrain a sale of the owner's property to pay for it." The ordinance of March 6, 1882, cannot be sustained upon the petition therefor.

Was the action of the council in passing the ordinance of March 6, 1882, based upon the recommendation of the board of health? Had the ordinance, directing the construction of the sewers in question, been silent as to the ground upon which the council acted, more difficult questions would be presented than are presented by the facts in this case. The ordinance is not silent on this subject. It expressly declares the action of the council to have been in pursuance of a petition of property owners. Such action shows, not only a total absence of any evidence of an intention to base it upon such recommendation, but positive proof that the action was not induced thereby. We are therefore not at liberty to assume that the action of the council was in pursuance of a recommendation of the board of health, or that the council intended by such action to express a judgment of approval of such recommendation. Not only does the unqualified declaration of the council clearly and unequivocally state the exact ground upon which that body did act, but the facts strongly corroborate the view that the council did not think of the rec-

ommendation of the board of health, or attempt to act under it. The recommendation was made to a preceding council, nearly two years prior to the adoption of the ordinance in question. The Thirteenth-street sewer district created by this ordinance is not the district to which the ordinance referred, but a new district carved out of the old one. The ordinance referred to in the recommendation of the board of health adopted a system of sewerage for district No. 2, as marked out on a certain plat prepared by the city engineer, but did not authorize the construction of any of the sewers thus indicated.

An examination of the plats showing the system of sewers for district No. 2, and the system of sewers in the Thirteenth-street sewer district, shows that these systems are so radically different that the construction of sewers in the new district cannot be held to be a construction of sewers as provided by the ordinance establishing a system of sewerage for district No. 2, to which the recommendation related. It is therefore literally true that the board of health could not have recommended the construction of sewers as they were afterwards authorized by the ordinance of March 6, 1882. The action of the council not having been based upon the recommendation of the board of health, or had in pursuance thereof, and the facts showing that such recommendation could not apply to the sewers constructed under the ordinance of 1882, it follows that the recommendation of the board of health has no bearing upon the case. Whether its terms complied with the statutory requirements, or whether the council, by using the word "adopted," expressed an approval thereof, are matters of no importance to the present inquiry. The conduct and language of the council, in adopting the ordinance of March 6, 1882, as well as all the facts in the case, show clearly, either that the council had no knowledge of the recommendation of the board of health, and the action of the council thereon in 1880, or that such recommendation was ignored. For the fore-

going reasons, the sufficiency of the recommendation of the board of health will not be considered.

It is claimed by counsel for appellees that the power to establish and construct sewers was vested in the city council by the charter of 1877, and that the action of the city council in relation to the construction of the sewers in the Thirteenth-street sewer district can be sustained under the provisions of that charter, defining the powers of the city council, notwithstanding any failure of the council to comply with the provisions of section 3 of the amendment of 1879 to the charter, relating to a petition by property holders, or recommendation of the board of health. The argument in support of this position is that the city council, by the charter of 1877, was authorized to construct sewers, whenever, in the judgment of the council, such construction was necessary, and that the amendment of 1879 was not a limitation upon the power conferred by the charter; that the provision in relation to the construction of sewers upon the petition of a majority of the property holders resident in any district should be held to be a delegation of power to such property holders to compel, by petition, the city council to exercise the power granted by the charter; that the amendment of 1879 does not in terms repeal the provisions of the charter of 1877, granting to the city council the power to construct sewers, and that if the two statutes can be construed together so as to give effect to each, this should be done, and this upon the well-settled principle of law that a repeal by implication is not favored by the courts. A statute is, by implication, a repeal of all prior statutes so far as it is contrary and repugnant thereto, and upon this principle a statute is impliedly repealed by a subsequent one, revising the whole subject-matter of the first.

Does the statute of 1879 revise the whole subject of the establishment and construction of sewers, as found in the charter of 1877? A comparison of the statute of

1879 with the statute of 1877 is one of the means to be used in determining this question. The charter of 1877 provides (section 40) that "the city council shall have, subject to the provisions hereinafter named, the general management and control of the finances, and all property, real, personal and mixed, belonging to the corporation, and shall likewise have power within the jurisdiction of the city, by ordinance not repugnant to the constitution of the United States or the constitution of the state of Colorado — *First*, to establish a system of sewerage; * * * *sixth*, to open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve and keep in repair streets, avenues, lanes and alleys, sidewalks, drains and sewers." We think the foregoing quotations from the charter of 1877 contain all the provisions conferring express power upon the city council in relation to the establishment and construction of sewers.

The act of 1879 is entitled "An act to amend an act entitled 'An act to reduce the law incorporating the city of Denver, and the several acts amendatory thereof, into one act, and to revise and amend the same so as to enable the city council to establish a system of sewerage.'" Section 1 provides that the city council of the city of Denver have the right to establish and maintain a sewer system, which shall be divided into three classes, viz., public, district, and private sewers. Section 2 provides for the establishment and construction of public sewers, and for the payment for such construction. Section 3 provides for the establishment and construction of district sewers, and for the payment of the cost of such construction. Section 4 relates to private sewers; to manner of contracting for the construction of sewers; to bonds and sureties thereon to be given by contractors; to provisions of ordinances relating to construction of sewers as to making an appropriation to pay for such construction; to the right of any citizen and tax-payer to make complaint to the city council that any work is being done

contrary to contract, or that the work done or material used is imperfect, and providing for a hearing upon such complaint, and a determination thereof by the council. Section 5 provides that no public sewer shall be constructed until the question of such construction shall have been submitted to a vote of such tax-payers of the city as are legal voters, and approved by a majority thereof. By the charter of 1877, the city council was empowered to *establish a system of sewerage,* and to *establish sewers and to keep them in repair.* The charter conferred upon the council the naked power to act in the premises, but made no provision for the manner in which the power should be exercised. The statute of 1879 was enacted to cure this defect, by a revision of the whole subject-matter, the object of the enactment being declared in the title to be " To enable the city council to establish a system of sewerage." By section 1 of the law of 1879, the city council was empowered to establish and maintain a sewer system. The power so conferred is equal in extent to the power conferred by the charter, and must have been intended by the legislature to take the place of the provisions of the charter. The law of 1879 not only confers upon the city council the power to establish and maintain a sewer system, but it provides how such power shall be exercised. The new statute covers the whole subject of the old one, and we think it must be held to be a substitute for it.

In Sedg. St. & Const. Law, 100, note, the author says: "If two statutes relate to the same subject-matter, though in terms not repugnant or inconsistent, if the later one is plainly intended to prescribe the only rule that shall govern, it will repeal the earlier." *State v. Conkling,* 19 Cal. 501, to same effect. The statute of 1877 and the statute of 1879 each confer the same general power upon the city council, but the statute of 1879 prescribes the only rule that shall govern in the exercise of that power.

In *Bartlet v. King,* 12 Mass. 537, 545, it was held that

" a subsequent statute, revising the whole subject-matter of a former one; and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former."

The rule that a statute which appears to cover the whole subject-matter of a former statute is a repeal of the former is laid down in *United States v. Tynen*, 11 Wall. 95; *Weeks v. Walcott*, 15 Gray, 54; *Nichols v. Squire*, 5 Pick. 168; *Swann v. Buck*, 40 Miss. 268; *Board Com'rs v. Potts*, 10 Ind. 286; *Pierpont v. Crouch*, 10 Cal. 315. We think the statute of 1879 is a substitute for the provisions of the charter of 1877, relating to the same subject, and that the action of the city council must be governed wholly by the provisions of the statute of 1879, and that the council has no power to act in the construction of sewers except as provided in that statute. The statute having prescribed how and when the council shall act, it has no power to act in any other or different manner.

It is said by Judge Field, in *Zottman v. San Francisco*, 20 Cal. 96–102, that " the rule is general, and applies to the corporate authorities of all municipal bodies, that where the mode in which their power on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of power."

It is urged by counsel for appellees that plaintiffs are estopped from now questioning the legality of the assessment, because they allowed the work to progress to completion without making any objection. The legality of the assessment is attacked upon the ground that the city council was not authorized to cause the sewer to be constructed, and hence not authorized to levy an assessment to pay for its construction. The objection goes to the origin of the proceedings and is jurisdictional. The principles of estoppel have no application to the facts in this

case.  *City of Chicago v. Wright,* 32 Ill. 192; *In re Sharp,* 56 N. Y. 256.

The fifth objection made by the appellants is that the assessments are illegal, in that they are not based upon value, benefits or improvements.   This raises the question of the validity of the provision of the statute authorizing the cost of sewers to be assessed against the property in the district according to area.   The doctrine announced in *Palmer v. Way,* 6 Colo. 106, is decisive of the question.   It was there held that an assessment of the cost of a sidewalk upon frontage was a valid assessment under the police power, and the province of the police power was held to be "the preservation of order, and the making of such rules and regulations as shall be conducive to the health, comfort and protection of society, and not primarily the raising of revenue."   The sewer assessments are within this power.   Cooley, Tax'n, 399.

The sixth objection made by appellants is that assessments were not made by the city assessor as required by the charter.   This objection goes to an irregularity that in no way did or could affect the rights of the tax-payer. The cost of the sewer is to be ascertained by the city engineer, and the assessment of such cost upon the property does not call for the exercise of judgment or discretion, but is made upon an arbitrary mathematical calculation. We do not think this objection should be sustained.

The ruling of the court below upon the demurrer to the complaint being favorable to appellants, their appeal does not necessarily require an expression of opinion upon that ruling; but as counsel for both appellants and appellees have argued the questions presented by the demurrer at considerable length, we will, without going into a review of the arguments made and authorities relied upon, state our conclusions upon the questions presented.   The two grounds of the demurrer may be treated unitedly.   Mr. Pomeroy, in his able treatise on Equity

Jurisprudence, has collated all the important cases upon the question of equity jurisdiction in cases of this character, and after an exhaustive review and comparison of the cases, has expressed his conclusions, and from which we quote the following: "Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is, and because there is, merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body." 1 Pom. Eq. Jur. § 269.   Equity assumes and exercises jurisdiction in cases of this character in order to prevent a multiplicity of suits.   1 Pom. Eq. Jur. § 260.   The rule that one or more plaintiffs may sue for the benefit of all others similarly situated and interested is well settled, and in some states it is held that an allegation of this kind is necessary to confer equity jurisdiction.   *Bull v. Read*, 13 Grat. 78; *Kennedy v. City of Troy*, 14 Hun, 308; *Wood v. Draper*, 24 Barb. 187; *McClung v. Livesay*, 7 W. Va. 329.   The demurrer was properly overruled. The judgment should be reversed.

I concur:   MACON, C.

I dissent:   STALLCUP, C.

PER CURIAM.   For the reasons assigned in the foregoing opinion, that the city council of the city of Denver

was without jurisdiction to cause the construction of the sewer in question, the conclusion arrived at in the foregoing opinion is approved, and the decree of the district court reversed and the cause remanded.

Elbert, J., did not sit in this case.

*Reversed.*