CECIL BROWN, TRUSTEE UNDER THE WILL OF KA-LEIPUA KANOA, DECEASED, *v.* MARSTON CAMP-BELL, SUPERINTENDENT OF PUBLIC WORKS, J. H. FISHER, AUDITOR, AND THE LORD-YOUNG ENGINEERING COMPANY, LIMITED, A CORPORATION.

RESERVED QUESTION FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 2, 1912.                    DECIDED OCTOBER 16, 1912.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

CONSTITUTIONAL LAW—*Fifth Amendment—taking private property for public use without just compensation.*

Chapter 83 of the Revised Laws, as amended, relating to the improvement of lands which are in an insanitary or dangerous condition, or deleterious to the public health, is a health measure enacted in pursuance of the police power, and in providing that the work of improvement shall be done by and at the cost of the owner of the land, or, in case he refuses to act, by the government at the land owner's expense, and authorizing the sale of the land to satisfy the lien imposed thereon for the amount of the cost of the improvement and the expense of foreclosure and sale, does not constitute or provide for the taking of private property for public use without just compensation in violation of the Fifth Amendment of the Constitution.

SAME—*Seventh Amendment—right of trial by jury.*

In the proceeding provided for by said chapter the land owner is not entitled, under the Seventh Amendment of the Constitution, to a trial before a jury on the question whether his land is in an insanitary or dangerous condition or deleterious to the public health.

Brown v. Campbell, 21 Haw. 314.

SAME—*due process of law—notice and hearing.*

> The provisions of said chapter, requiring the giving of notice
> to the land owner of the decision of the board of health as to the
> condition of the land and of the nature and extent of the improve-
> ment required, and allowing an appeal from such decision to a
> board appointed by the circuit court, whose decision shall be final,
> with the opportunity to the land owner to be heard before such
> board of appeal, held to constitute due process of law, notwith-
> standing such board is not empowered to compel the attendance
> of witnesses or to administer oaths to witnesses.

SAME—*delegation of taxing power.*

> The provisions of said chapter held not to constitute a delega-
> tion to an administrative board of the power of taxation.

OPINION OF THE COURT BY ROBERTSON, C.J.

This is a suit for an injunction to restrain the prosecution of
certain work of improvement sought to be undertaken and car-
ried out under and pursuant to the provisions of chapter 83 of
the Revised Laws as amended by Acts 29, 112 and 157 of the
Session Laws of 1911. The bill avers, in substance, that the
plaintiff is a citizen and taxpayer of the Territory, residing in
the city and county of Honolulu; that he is the duly appointed,
qualified and acting trustee under the will of Kaleipua Kanoa,
deceased, and is the owner of a certain described parcel of land
situate on the southeast side of Kanoa lane, in Honolulu, con-
taining an area of 3500 square feet; that the superintendent
of public works on March 11, 1911, served the plaintiff with
the following notice:

"Honorable Cecil Brown,

Trustee and Agent, Estate of Kaleipua Kanoa,

Honolulu.

I am in receipt of the following communication from the
Board of Health of the Territory of Hawaii.

'Honolulu, T. H., March 11th, 1911.

Honorable Marston Campbell,

Superintendent of Public Works,

Honolulu.

Sir:—.

It is the opinion of the Board of Health and was so
resolved by the Board at a meeting thereof held on Monday the

6th day of March, 1911; that the following described piece or parcel of land, to wit:

That piece or parcel of land situate on the Southeast corner of Kanoa Lane, makai of King Street, City and County of Honolulu, Territory of Hawaii, described as follows:

Beginning at a stake on the North corner of this lot, on the Southeast side of Kanoa Lane, said point being located by the following traverse from Government Survey Street Monument near the East corner of King and Alapai Streets, said monument is on a 12 foot offset to the Southeast line of Alapai Street and on a 10 foot offset to the Northeast line of King Street, and the co-ordinates of said monument referred to Government Survey △ 'Punchbowl' are, 3166.7 feet South and 1742.6 feet West.

(a)     299° 29′ 30″ 306.5 feet.
(b)     40° 53′ 00″ 298.7 feet to the initial point of this lot and running by true azimuths:
1.     310° 12′ 35 feet along Kaleipua Est. to stake
2.     40° 12′ 100 feet along same to stake.
3.     130° 12′ 35 feet along same to stake.
4.     220° 12′ 100 feet along same to the point of beginning.

Being a portion of L. C. A. 569 to Puniwai, and containing an area of 3500 square feet.

is deleterious to the public health in consequence of being low and below the established grades of the streets nearest thereto and at times covered or partly covered by water and improperly drained and incapable by reasonable expenditure of effectual drainage, and that said land is in an insanitary and dangerous condition.

The operation deemed advisable by the Board and hereby recommended by it and so resolved by it at said meeting to improve said land, is as follows: that said land be put in a sanitary and safe condition by improving the same in such manner as will effect such purpose, and more particularly that the same be filled in to such grade as will be necessary for that purpose, and that in the opinion of this Board such filling in should be to the following grade to wit: to such grade that the surface of said piece of land when so filled in will be, as near as may be, in the same plane with the established grades of the streets nearest to said piece of land.

You are therefore requested to take the necessary steps pro-

vided by law and more particularly by Chapter 83 of the Revised Laws of Hawaii as amended by Acts 29, 112 and 157 of the Session Laws of 1911, to cause said land to be so improved.

Respectfully yours,

Board of Health of the Territory of Hawaii.

By (Sgd) J. S. B. PRATT,

President.'

In pursuance of the above recommendation of the Board of Health, you are hereby notified to begin, within twenty days from your receipt hereof, to put said piece or parcel of land in sanitary and safe condition by improving the same in such manner as will effect such purpose, to wit: to such grade that the surface of said piece of land when so filled in will be, as near as may be, in the same plane with the established grades of the streets nearest to said piece of land.

You are further notified that in case you fail to begin work as aforesaid on the improvement of said piece of land within twenty days, and to complete such work within 60 days from your receipt of this notice, such work or so much thereof as may remain undone will be done by the Territory at the cost of the land benefited thereby.

(Sgd) MARSTON CAMPBELL,

Superintendent of Public Works of the Territory of Hawaii."

Also, it is averred, that the superintendent of public works, after having advertised for and received tenders for filling certain lands in Honolulu, including plaintiff's land, entered into a contract with the Lord-Young Engineering Company, Limited, the lowest bidder therefor, for the performance of the work; that the auditor of the Territory approved said contract; that the contractor is about to commence work under the contract; that the superintendent of public works intends to pay out large sums of money and to approve vouchers under said contract as the work progresses; and that the auditor intends to issue warrants upon the treasurer of the Territory to said contractor in payment of the obligations so approved by the superintendent of public works. The bill further avers that the

plaintiff is advised that chapter 83 of the Revised Laws, as amended, is unconstitutional and invalid in that it deprives the plaintiff of his property without due process of law; that it allows private property to be taken for public use without just compensation; that under it the plaintiff is denied a trial by jury; that it is contrary to the Fifth, Seventh and Fourteenth Amendments of the Constitution, and is in violation of section 55 of the Organic Act of Hawaii. The defendants, the superintendent of public works and the auditor, demurred to the bill, and the circuit judge reserved to this court the question whether the demurrer should be sustained.

The bill seems to have been drafted upon the theory that plaintiff's objections to the prosecution of the work under the contract were those merely of a taxpayer. But the argument in this court has proceeded on the supposition that the plaintiff is threatened with injury to his rights as the owner of specific property.

The statute provides that whenever in the opinion of the board of health any tract or parcel of land shall be deleterious to the public health in consequence of being low, and at times covered or partly covered by water, or of being improperly drained or incapable of effectual drainage, or for other reason in an insanitary or dangerous condition, it shall be the duty of the board to report such fact to the superintendent of public works, together with a brief recommendation of the operation deemed advisable to improve such land; that thereupon the superintendent of public works shall serve a copy of such notice upon the owner or occupant of the land and notify him that in case he fails to begin the work of improvement within twenty days and to complete the same within such reasonable time as may be designated, the work or so much thereof as may remain undone will be done by the Territory at the cost of the lands benefited thereby; that within such period of twenty days the owner or occupant so notified may file an appeal from the decision of the board of health condemning the land as deleterious

to the public health or from its decision as to the nature and extent of the improvement to be made with the superintendent of public works who shall transmit the appeal to the circuit court of the circuit wherein the land is situated; that the court shall thereupon appoint three disinterested persons who shall sit as a board to hear and determine whether or not the land is deleterious to the public health and whether improvements of the nature designated in such notice are required, and if such improvements are not required, what, if any, improvements are required in order to render such land sanitary; that the decision of a majority of the board as to the necessity and nature and extent of the improvements shall be final and conclusive upon all parties in interest; that the board shall appoint a time and place for hearing and give notice thereof to the board of health, the superintendent of public works and the owner or occupant of the land; that the superintendent of public works shall furnish the appeal board with a plan of the lands to be improved, also a statement showing the extent and nature of the contemplated improvements, and an estimate of the cost thereof; that in case no appeal shall have been taken from the decision of the board of health, and the land owner fails to make the improvement as directed, or in the event of an appeal having been taken and the land owner fails to make the improvement in accordance with the decision of the appeal board, the superintendent of public works may proceed to make or complete the improvement accordingly; that the cost of the improvement made or completed by the superintendent of public works shall constitute a lien upon the land, notice of which shall be recorded in the office of the registrar of conveyances and a copy of the notice shall be served on the land owner; that such lien may be foreclosed at any time after six months and within two years by suit in equity or by public sale after certain prescribed notice without suit; that the land shall be offered for sale at public auction at an upset price equal to the amount of the lien plus the cost of advertising and other costs incurred, and if no higher

price is bid shall be knocked down to the Territory which in such case shall be deemed to be the purchaser at the upset price; that the balance of the purchase price after deducting the amount of such lien and costs, or in case there is no balance or an insufficient balance an amount equal to the value of the land as last previously assessed for taxation shall be paid to the land owner; and that in case the Territory shall be the purchaser the amount of such assessed value shall be paid out of a certain fund.

The claim of the plaintiff that the statute, if enforced, would constitute a taking of his property for public use without making just compensation therefor, leads to a consideration, first, of the general nature and purpose of the statute, and, next, of some of its provisions. The contention is made that the statute is wholly void because it provides for the assessment of the whole cost of the making of the improvement upon the land upon which the work is done, whereas, it is argued, the legislature, in providing for such schemes of reclamation under a statute such as that under review, cannot constitutionally authorize an assessment against a particular parcel of land in excess of the value of the special benefit accruing to that land, or its owner, by reason of the improvement made or contemplated. The force of such a contention will depend upon the character of the statute at which the argument may be directed. For example, the opening, grading, and paving of public highways is essentially a function of government. The duty to grade or pave such a highway may not be imposed by law upon abutting owners, and although such owners may legally be compelled to contribute to the cost of grading and paving the highway upon which their lands are situated, the amount of the enforced contribution, laid in the form of a special tax or assessment, cannot legally exceed the value of the special benefits which accrue to the abutting property as the result of the improvement. The foundation of the power to tax specially in such cases is the benefit the object of the tax confers on the owners of the abut-

ting lots.    The value of that benefit will mark the limit of the assessment.    *Norwood* v. *Baker,* 172 U. S. 269; *Martin* v. *District of Columbia,* 205 U. S. 135; *Wistar* v. *Philadelphia,* 80 Pa. St. 505; *White* v. *Gove,* 183 Mass. 333; *Agens* v. *Mayor of Newark,* 37 N. J. L. 415.    But the statute in question does not involve the theory of special benefits accruing from a public improvement.    This statute is a health measure as is sufficiently shown by the language of its first section.    (R. L. Sec. 1025.) Proceedings under it commence with a finding by the board of health that certain land is deleterious to the public health or in an insanitary and dangerous condition.    Land in an insanitary condition or otherwise deleterious to the public health through natural causes not contributed to by man was not a nuisance at common law.    29 Cyc. 1156; Wood's Law of Nuisances, (2 ed.) Sec. 116.    Such a condition cannot be treated as a nuisance except by authority of statute.    But there should be no doubt as to the authority of the legislature, in the interest of the public health and in the exercise of the police power, to impose upon the owner of land which has become or threatens to become a menace to health, through natural causes or by human agency, the duty of putting it in proper condition by the making of improvements which will render it sanitary.    The statute in question does not expressly declare such to be the duty of owners of land of the character of that described, but the inference is unavoidable that it was enacted on the theory that the owner of such property owes a duty to the public which he may be required to perform, and that in case he has failed or refused to perform that duty a governmental agency may be authorized to do the work of improvement for him and at his expense.    We believe it to be well established that the legislature may impose or assume a duty on the part of property owners to do certain things with reference to their property for the protection of the public irrespective of whether the performance of such duty will financially benefit the owner, and provide that in case he fails to do the necessary thing, the public,

through governmental instrumentality, may do what is neces-
sary and assess the property upon which the work is done with
the entire cost thereof without reference to the matter of bene-
fits.    This would not be the exercise of the power of eminent
domain, for it would not constitute a taking of private property
for public use.    Neither would it be the exercise of the power
of taxation, for the work required to be done would not properly
be regarded as a public improvement even though it would re-
sult in a benefit to the public.    It would be the police power—
the power to conserve the health and safety of the community
that would be called into action.    *Railroad* v. *Nebraska,* 170
U. S. 57; *Northern Pacific Railway* v. *Duluth,* 208 U. S. 583;
*State* v. *Blake,* 36 N. J. L. 442, 447; *Van Wagoner* v. *Paler-
son,* 67 N. J. L. 455; *Keese* v. *Denver,* 10 Colo. 112, 123;
*Meanor* v. *Goldsmith,* 216 Pa. St. 489; *Com.* v. *Roberts,* 155
Mass. 281; *Village of St. Marys* v. *Railroad Co.,* 60 Oh. St.
136; *Lisbon Ave. L. Co.* v. *Lake,* 134 Wis. 470, 475.

"If there is any fact which may be supposed to be known by
everybody, and, therefore, by courts, it is that swamps and stag-
nant waters are the cause of malarial and malignant fevers, and
that the police power is never more legitimately exercised than
in removing such nuisances."    *Leovy* v. *United States,* 177 U.
S. 621, 636.    The filling of low land upon which water collects
and becomes stagnant so as to menace the health of the neigh-
borhood falls within the principle referred to, and the duty to
improve conditions may be enjoined upon the owner, and, if he
fails to take action after proper notice, the municipality or
other agency may be authorized to make such improvement as
the circumstances may require and to assess the cost against the
land.    *Hagar* v. *Reclamation District,* 111 U. S. 701; *Hagar*
v. *Supervisors of Yolo,* 47 Cal. 222; *Horbach* v. *Omaha,* 54
Neb. 83; *Bancroft* v. *Cambridge,* 126 Mass. 438; *Nickerson* v.
*Boston,* 131 Mass. 306; *Oliver* v. *Monona Co.* 117 Ia. 43; *Bliss*
v. *Kraus,* 16 Oh. St. 54; *Sessions* v. *Crunkilton,* 20 Oh. St. 349.

We do not mean to say that swamp lands held in private own-

ership may not be reclaimed through the exercise of the power of taxation at the expense partly of the owners and partly at that of the public where the scheme constitutes a general public improvement and is not a mere matter of compelling land owners to abate nuisances or remedy insanitary conditions. In such cases, as in the matter of grading and paving streets, the limit of the assessment which may be imposed against the lands immediately benefited is the value of the special benefit conferred. The case of *Tidewater Company* v. *Coster,* 18 N. J. E. 518, upon which counsel for the plaintiff seem to place much reliance, was one involving the making of a public improvement. Many cases of the same class might be cited.

We hold that the constitutional inhibition against the taking of private property for public use without just compensation is not violated by the provision of this statute authorizing the assessment of the whole cost of the improvement against the land improved.

It is contended that as the land owner may be compelled to submit to the sale of his land and to accept in lieu of his land an amount of money equal to its assessed value, which may be less than its actual value, constitutes a taking of his property without just compensation. The answer is that the lawful exercise of the police power may incidentally result in the taking or destroying of private property without any compensation being made to the owner. *Mugler* v. *Kansas,* 123 U. S. 623, 669; *Lawton* v. *Steele,* 152 U. S. 133. It was competent for the legislature to provide that the cost of making the improvement should constitute a lien on the land and that the lien should be satisfied by a sale of the premises. This naturally follows from the rule that when the land owner refuses to do the work the government may do it at his expense. It would be idle to give a lien and not permit its enforcement. The most that the owner could legally demand would be the balance of the proceeds of sale over and above the amount of the lien and the expense of foreclosure and sale. It may be noted that the

statute provides that in any event the land owner shall receive an amount not less than that of the assessed value of the land, so that in some cases it may happen that the Territory would not be able to recoup the full cost of the improvement. In this respect the statute is more liberal than is necessary.

Further, it is argued that the provision which requires the owner of the land to make the improvement in the manner directed is not due process of law in view of the consequences of a refusal on his part to comply with the direction. The argument is that, viewing the condition of the property as constituting a nuisance, the owner is entitled to abate it in such manner as he may deem fit so long as he does it effectually. Several cases have been cited in support of the contention but it is not altogether clear that they apply to the circumstances involved here. The statute provides that the board of health shall make "a brief recommendation of the operation deemed advisable to improve such land," and that that recommendation is to be carried into effect by the superintendent of public works in case the land owner, after notice, fails to take action. The plaintiff was notified to fill in his lot to a certain grade, but the manner in which he should do the filling was left to his own discretion. Whether or not the notice went too far we think it is not necessary to decide in view of the fact that it is not alleged that the plaintiff appealed from the decision of the board of health, or that he offered or is willing to put his land in sanitary condition in his own way. There are cases which hold that where one is notified to abate a nuisance in a certain way he is not bound to pursue the exact method prescribed but may adopt any proper means to abate it. *Belmont* v. *N. E. Brick Co.* 190 Mass. 442; *Morford* v. *Bd. of Health,* 61 N. J. L. 386. But where the party notified pays no attention to the notice and takes no steps whatever to abate the nuisance he is not in a position to claim that he is absolved from taking any action because the notice served upon him was too precise.

The plaintiff does not claim that his land is not in the con-

dition described in the finding of the board of health. He maintains, however, that he is entitled to a trial by jury on the question whether his land constitutes a nuisance or is, in fact, in a condition rendering it deleterious to the public health, and that as the statute does not give him the right to such a trial it is contrary to the Seventh Amendment of the Constitution. That Amendment preserves the right of trial by jury in suits at common law, but it does not apply to a special proceeding such as that provided for by the statute in question. The fact that courts of equity have jurisdiction to restrain by means of injunction the maintenance of nuisances shows that a party is not always entitled to a trial by jury on the question whether he is maintaining a nuisance. 24 Cyc. 122; *Mugler* v. *Kansas,* 123 U. S. 623, 673.

We think there is no merit in the contention that the provisions which entitle the land owner to notice and a right to be heard before an impartial board on appeal from the decision of the board of health, without allowing compulsory process to obtain witnesses, or empowering the board to administer oaths to witnesses, and making the decision of the board final, are lacking in due process of law. Many decisions of the supreme court of the United States may be cited to show that while due process of law implies notice and an opportunity to be heard it does not necessarily imply proceedings in court. *Public Clearing House* v. *Coyne,* 194 U. S. 497, 508; *Hibben* v. *Smith,* 191 U. S. 310, 322; *Murray's Lessee* v. *Hoboken L. & I. Co.* 18 How. 272. Referring to the case last cited, the court, in the case of *Davidson* v. *New Orleans,* 96 U. S. 97, 102, said, "A most exhaustive judicial inquiry into the meaning of the words 'due process of law' as found in the Fifth Amendment, resulted in the unanimous decision of this court, that they do not necessarily imply a regular proceeding in a court of justice, or after the manner of such courts." Speaking of this constitutional requirement, the supreme court, in the recent case of *Ballard* v. *Hunter,* 204 U. S. 241, 255, said, "A precise definition has never been attempt-

ed.    It does not always mean proceedings in court.    Its funda-
mental requirement is an opportunity for a hearing and defense,
but no fixed procedure is demanded.    The process or proceed-
ings may be adapted to the nature of the case."

We have found no case which would lead us to conclude that
in a proceeding before an administrative board acting in a judi-
cial or quasi-judicial capacity due process of law requires that
the board should have authority to compel the attendance of wit-
nesses or that it should hear only sworn testimony.    Such a
board could, and doubtless would, act at least to some extent
upon its own knowledge and observation.    In the proceeding
contemplated by this statute it would be entirely proper for the
board of appeal, besides considering such matters as the parties
before it might present, to examine, in a more or less informal
manner, into all the circumstances and conditions bearing upon
the matter in hand with a view of arriving at an intelligent and
just conclusion.    We think such a procedure would be, in the
language of the supreme court, "adapted to the nature of the
case."

The remaining contention is that the statute violates section
55 of the Organic Act in that it attempts to delegate the power
of taxation to an executive board.    This point is disposed of
by the view we have taken as to the general nature and purpose
of the statute and the holding that it was not enacted in pursu-
ance of the taxing power.

Finding, as we do, that the statute is not open to any of the
objections raised by the plaintiff, we advise the circuit judge
that the demurrer should be sustained.

*A. A. Wilder and I. M. Stainback (Thompson, Wilder, Wat-
son & Lymer and Holmes, Stanley & Olson on the briefs) for
plaintiff.*

*A. G. Smith, Deputy Attorney General (A. Lindsay, Jr.,
Attorney General, with him on the brief), for defendants.*