# INTERNATIONAL TRUST COMPANY, LIMITED, *v.* LYMAN H. BIGELOW, SUPERINTENDENT OF PUBLIC WORKS.

## No. 2121.

ARGUED AUGUST 21, 1934.　　　DECIDED OCTOBER 23, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action to recover from the defendant the sum of $790.28 which was paid to him, as superintendent of public works, in the following circumstances: On September 7, 1926, the plaintiff brought proceedings in the land court of the Territory of Hawaii to have its title registered and confirmed to certain land situated in the Waikiki district, consisting of an area of 7.466 acres. On January 17, 1927, the defendant, acting on behalf of the Territory and under statutory authority, filed the following lien against said land: "Under and in accordance with chapter 75 of the Revised Laws of Hawaii 1925, and amendments thereto, notice is hereby given to all whom it may concern, that the Territory of Hawaii claims a lien to the amount of $790.28 on the following described lands, to-wit:" (Land described is hereinafter referred to as Lot 256.) "That the work done upon said land for which said lien is claimed was as follows: The dredging and construction of a drainage system in and through the Waikiki Improvement District, Honolulu, as created by Act 221 of the Session Laws of 1921, said amount of $790.28 being the proportion of the cost of such drainage system, including the cost of drains and ditches, damages for property taken for the same and all other expenses contemplated by paragraph 2 of section 984, Revised Laws of Hawaii

1925, to be apportioned against the above described property, on a basis of $105.85 for each acre within said improvement district. That the names of the last known owners are International Trust Company, Limited."

On January 18, 1927, the Territory filed an answer in the land court asserting a claim against the land for the sum mentioned and prayed that plaintiff's title thereto be only registered subject to the lien. Thereupon the plaintiff, on February 10, 1927, paid the amount claimed under protest and obtained a receipt therefor.

The ultimate question involved in the controversy is of course whether the lien filed by the Territory is valid and enforceable against the property. If it is the plaintiff cannot prevail. If it is not the money paid under protest must be returned to the plaintiff. The circuit court decided the question in the affirmative and entered judgment accordingly. The plaintiff has brought the case to this court on exceptions.

On October 14, 1920, the board of health passed a resolution declaring that the area bounded by Sheridan Street, King Street, Waialae Road, Kapahulu Road and the sea, comprising an area of about 1414 acres, in consequence of its improper drainage, was deleterious to the public health, and recommended to the superintendent of public works that the district be drained. The superintendent of public works prepared plans and specifications for the drainage canal and on June 30, 1921, sent a notice to each of the landowners within the district, including the trustees of the Bishop Estate who at that time held the legal title to Lot 256, being that portion of the land on which the lien now in question was filed, informing such landowners that unless the work on the canal was commenced within twenty days and finished in sixty days from the receipt of the notice the Territory would perform the work at the expense of the landowners. No attempt was made by the

landowners or any of them to comply with the demand contained in the notice and the canal was subsequently constructed by the Territory. The trustees of the Bishop Estate appealed from the decision of the board of health condemning the land of the appellants, including Lot 256, as insanitary and deleterious to public health. (There were also appeals by other landowners, which, however, are not before us for consideration.)· These appeals, as directed by statute, were lodged with Lyman H. Bigelow, superintendent of public works, whereupon Bigelow, also in accordance with statutory requirements, on December 20, 1921, transmitted to the presiding judge of the circuit court of the first judicial circuit all of said appeals with the request that he appoint three disinterested persons to sit as a board and to hear and determine the appeals. Acting upon that request and in accordance with the statute the circuit judge, on January 9, 1922, appointed as members of the board J. H. Fisher, J. L. Fleming and I. H. Beadle. The grounds of the Bishop Estate appeal were that "the undersigned * * * do hereby appeal from the decision of the board of health condemning said lands as deleterious to the public health; and from the decision and order of the superintendent of public works as to the nature and extent of the improvements to be made; also on the ground that the maps, descriptions and estimates required to be made pursuant to section 976A of the Revised Laws of Hawaii, 1915 (S. L. 1915 Act 190), particularly of the cost to be apportioned to and assessed against each lot or parcel of land in said district, have not been made by the superintendent of public works; also on the further ground that the condition of the above mentioned lands will not be affected by the proposed alleged improvement."

After a full hearing, at which all of the parties were represented by counsel and much testimony was taken,

the board rendered its decision in writing. In its decision, speaking of the Bishop Estate appeal so far as it related to Lot 256, the board said: "This lot adjoins Lot 264 and is makai thereof. The land is of coral formation and water containing mosquitoes was found there. Formerly this land was used for taro and rice, and afterwards for vegetables. It is more than 5 feet above sea level. We find that this land is deleterious to the public health, by reason of being low and at times covered, or partly covered by water, and that it will be benefited by a proposed 24 inch storm drain, running from Waialae Road to the canal, as shown on Exhibit 'F.' The appeal as to this piece of land is overruled."

It is claimed by the plaintiff that the proceedings under which the improvement in question was instituted and carried to completion were under chapter 71, R. L. 1915, as amended by Act 190, L. 1915 (which is now, without substantial change, chapter 75, R. L. 1925), and that it was therefore the exercise of the police power. (In considering the provisions of this statute we shall indicate them by reference to R. L. 1925.) The correctness of this claim may be conceded.

Section 975, R. L. 1925, which is the first section in chapter 75, makes it the duty of the board of health, whenever in its opinion "any tract or parcel of land situated in the Territory shall be deleterious to the public health in consequence of being low, and at times covered or partly covered by water, or of being situated between high and low water mark, or of being improperly drained, or incapable by reasonable expenditure of effectual drainage, or for other reason in an insanitary or dangerous condition," to report such fact to the superintendent of public works together with a brief recommendation of the operation deemed advisable to improve such land. This, as we have seen, was done by the board of health on October 14, 1920.

After providing for notice to the owners or occupants of land within the proposed district and the service of such notice by the superintendent of public works (§§ 977, 978), provision is made (§ 979) for an appeal from the recommendation of the board of health. This section provides that within the time mentioned therein "any owner or occupant of land sought to be improved, his attorney or agent, may file an appeal from the decision of the board of health condemning the land as deleterious to the public health or from its decision or the order of the superintendent of public works as to the nature and extent of the improvements to be made." The appeal is required to be filed with the superintendent of public works who in turn is required to transmit it to the circuit court where the land is situated. Section 980 provides for the hearing and decision of any such appeal. The court is directed upon receiving an appeal to "appoint three disinterested persons who shall sit as a board to hear and determine such appeals. They shall have power to determine whether or not the land is deleterious to the public health and whether the improvements of the nature designated in such notice are required, and if such improvements are not required, what, if any, improvements are required in order to render such lands sanitary; such board shall also have power upon any such appeals to determine the amount to be in conformity with the provisions of section 984, apportioned to and assessed against each lot or parcel for such drains or ditches and for the lands acquired therefor and for all other cost, if any, of such drainage system, and whether or not any lands are improperly included in or excluded from the drainage district. The decision of a majority of the board as to the necessity and nature and extent of the improvements and as to the apportionment of the cost of any drainage system shall be final and conclusive upon all parties in interest."

It is contended by the plaintiff that there was no substantial evidence before the appeal board that Lot 256 was in a condition which rendered it insanitary and deleterious to public health and therefore the conclusion of the board that it was in such condition was entirely void, and being void there was no authority for including it in the area to be drained and consequently no authority for imposing upon it any portion of the cost of drainage.

The circuit judge, after reviewing the evidence before the board, held that it contained no substantial evidence supporting the decision of the board on this point. This holding, however, is not binding upon this court but is reviewable. The situation is similar to that presented in *Louis* v. *Victor*, 27 Haw. 262, 263, and other cases there cited, where the question was whether there was substantial evidence to support the verdict of the jury or findings of fact made by the circuit court in jury-waived cases. We therefore have made a careful examination of the testimony adduced before the board with the view of determining whether in our judgment it contains any evidence upon which the conclusion of the board can properly be sustained.

It appears from the testimony of Lyman H. Bigelow, superintendent of public works, that the lands comprised in Lot 256 and other lots which he mentioned were in the same locality and of the same general character as Lot 13, the condition of which latter lot he described with considerable detail. He gave reasons which the board might well have considered to be sound for his opinion that Lot 13 was insanitary and deleterious to the public health. Among these reasons was its proximity to a stream that in times of heavy rain flooded it with filthy water which became stagnant. After testifying regarding Lot 13 the witness was asked the following question: "Referring now to pieces of land in the same general location, being parts

of lots 256, 240, 243, 240, 320, 229, 227, 236, 226, all Bishop Estate lands, will what you have to say with regard to that land be the same as what you said in regard to number 13?" This question was answered in the affirmative.

Klemme, a sanitary inspector, testified that he found wrigglers in ditches on Lot 256 and in eleven holes in coral rock and every place which he examined there were mosquitoes.

Vasconcellos, another sanitary inspector, testified to the same conditions, saying in addition that Lot 264 was an ideal place for breeding mosquitoes, having on it white coral, and that a portion of Lot 256 also had on it white coral.

Dr. Frederick E. Trotter, president of the board of health, testified that there were here two types of mosquitoes, both of which transmit yellow fever and dengue; that if there should be an attack of yellow fever in this community it would have a very serious effect and there might be considerable fatality and large financial loss. He also testified that if the Waikiki district comprised within the boundaries already mentioned were properly drained by the construction of the proposed canal there would be a marked reduction of mosquitoes in that neighborhood.

Arthur K. Arnold, chief sanitary inspector, testified that the whole district was susceptible of being flooded; that within his own knowledge it was flooded on three different occasions; that there was only one high point towards Kapahulu Road within the whole district which was not flooded (Kapahulu Road as shown by map [Exhibit C] is a considerable distance from Lot 256) ; that the last time the district was in a flooded condition was in January, 1922, the same month and year in which the proceedings before the board of appeals began; that the existing streams were inadequate to drain the lands within the district; and that throughout the whole district he had

"found a considerable number of mosquito breeding places."

We think the foregoing testimony is substantial and that it is sufficient to support the board's finding. In addition it appears from the decision of the appeal board that after the members of the board took the oath of office they inspected the property included in the appeals and that after such inspection they proceeded to hear the evidence. Speaking of the effect of observations made by such a board this court said in *Brown* v. *Campbell*, 21 Haw. 314, 326: "Such a board could, and doubtless would, act at least to some extent upon its own knowledge and observation. In the proceeding contemplated by this statute it would be entirely proper for the board of appeal, besides considering such matters as the parties before it might present, to examine, in a more or less informal manner, into all the circumstances and conditions bearing upon the matter in hand with a view of arriving at an intelligent and just conclusion. We think such a procedure would be, in the language of the supreme court, 'adapted to the nature of the case.' "

The finding of the board that Lot 256 was in an insanitary condition is therefore, under the rule laid down in *Magoon* v. *Lord-Young Engineering Co.,* 22 Haw. 327, decisive and free from judicial disturbance. In the opinion in that case the court, speaking on this point, said (pp. 346, 347) : "The question whether a thing may or may not be a nuisance within some provision of law must be settled as one of fact, and not of law. *Grossman* v. *Oakland,* 30 Ore. 478, 484; *Des Plaines* v. *Poyer,* 123 Ill. 348, 351. And the fact whether a certain piece of land is in an insanitary and deleterious condition so as to be subject to improvement under the provisions of the statute is to be decided by the board of appeal, if an appeal has been lodged, or by the finding of the board of health as reported to the

superintendent of public works when no appeal is taken. Upon a hearing before the appeal board the property owner could contest the finding of the board of health that his premises are in an insanitary or dangerous condition, and the recommendation that they should be treated in the manner outlined by the board in its report. The finding in either case would be conclusive and binding if there was any substantial evidence to support it. We hold, however, that the finding of the board of health and the decision of the board of appeal may be attacked in a proceeding such as the case at bar on the ground that there were no facts existing which could be regarded as supporting the conclusion. The complainants maintain that their lands are not in an insanitary condition or deleterious to health; that there were no facts upon which a conclusion to that effect could rest; that the scheme adopted by the board was not in reality a health measure, but a general reclamation scheme and public improvement which could be accomplished only through the exercise of the right of eminent domain; and that the board of health has exceeded its powers and proceeded without jurisdiction. The complainants were entitled to be heard on this contention as it presented a question of law to be determined by the court."

In the *Magoon* case there was no appeal by the landowners from the recommendation of the board of health. The question of law, therefore, upon which they were entitled to be heard was whether the board of health was without jurisdiction to recommend the course which it took because it was not based on any facts justifying it. The refusal of the court to permit the landowners to be heard on this question was held to be error.

In the instant case there was an appeal by the landowner. The question of law therefore upon which it was entitled to the judgment of the circuit court was whether

there was substantial evidence before the appeal board that the land in question was in an insanitary condition which rendered it dangerous to the public health. There being such evidence the conclusion reached by the board is under the rule announced in the *Magoon* case "conclusive and binding." The circuit judge after having, erroneously we think, placed a different estimate upon this evidence, nevertheless held that the inclusion of the plaintiff's land within the drainage district was justified upon another theory which we deem it unnecessary to consider.

In addition to authorizing the appeal board to determine whether the land recommended to be drained was deleterious to the public health, section 980, R. L. 1925, also empowers the board to determine whether the necessity and nature and extent of the improvements designated in the notice were required. The board decided these questions in the affirmative. Having so decided its decision, being undeniably supported by substantial evidence, became under the statute final and conclusive.

The plaintiff also contends that the lien filed against its land is unenforceable for the reason that the notice sent to its predecessor in title was for several reasons defective. The notice in its composition complied with the requirements of chapter 75, R. L. 1925. It stated what the board of health had done and what had been recommended; that plans, maps, specifications, blue prints, etc., were in the office of the superintendent of public works for the perusal of the landowners, and that unless work on the proposed canal was commenced by the property owners within twenty days and completed within sixty days after the receipt of notice, the work or so much of it as remained uncompleted would be performed by the Territory with costs assessed according to the statute.

The plaintiff argues that the notice was irregular and insufficient and was sent out as a mere formality and with-

out good faith. We think it is a sufficient answer to this argument to say that the notice served the purpose for which it was intended, namely, to apprize the property owner of the recommendation of the board of health and what must be done to prevent the Territory from itself doing the work designated. It also gave information of the place where the plans, blue prints, etc., were located and could be inspected. So far as the record shows to the contrary no objection whatever to the notice was made until the trial of the instant suit in the circuit court. It affirmatively appears from the appeal of plaintiff's predecessor in title to the superintendent of public works that no such ground of objection was made to the inclusion of Lot 256 within the district to be drained and no discussion of the notice of appeal appears in the decision of the appeal board. In these circumstances we think that even if the notice had been defective the failure of the then property owner to challenge its sufficiency before the drainage system was completed or even begun and its cost incurred by the Territory constituted a waiver of such insufficiency. Any other view would permit the plaintiff in the instant case to interpose a defense to the lien against its property, the right to make which had been forfeited by its predecessor in title.

The plaintiff also in argument attacks the notice on the ground that it is susceptible of the meaning that each property owner separately was required to construct the canal, thus compelling him to do something for the benefit of the other property owners which was not sanctioned by the law. We think this is not a fair construction of the notice. There is no implication that the canal could not be constructed by the cooperative efforts of the property owners nor does the notice prevent them from doing the work through any agency they might select. Moreover the notice, so far as this point is concerned, is in conformity with

the statute. The validity of the statute is not questioned and the notice, being in compliance with it, we think cannot be questioned. Besides this the failure of the property owner to make timely objection to the notice on the ground now under consideration was for the reasons which we have already discussed waived.

It is also urged that the notice is invalid because of the impossibility of compliance with the direction that the canal be completed within sixty days from the receipt of the notice. Again, there is no showing that prior to the instant case any objection was made to the notice on this ground or that any application was made to the administrative authorities for an extension of the time designated in the notice. In this state of the record the contention of the plaintiff under the authority of the *Magoon* case, *supra*, cannot be sustained. In that case it was said (p. 340): "The complainants claim that it was impossible to do the work required of them within the time allowed them to do it as specified in the notices. But if this were the only defect, and if the complainants were ready and willing to comply with the order if sufficient time were allowed, good faith on their part would require them to apply for an extension of time. We think that where a property owner who has received due notice to remedy deleterious conditions on his premises does not intend to comply therewith he cannot afterwards, with any show of good faith, ask that the superintendent of public works be restrained from doing the work in accordance with the requirements of the statute, merely because the time allowed by the notice, though substantial, was too short."

It is claimed by the plaintiff that the property owners were excused from applying for an extension of time because when the notices were sent to them the Territory had already let a contract to the Hawaiian Dredging Company to do the entire work involved in the dredging of the

canal. The argument runs that because of this fact it would have been a useless formality to request further time. What the administrative authorities would have done had the request been made is mere speculation and the property owners were not justified in withholding a request they had a right to make on the bare assumption that if it was made it would be refused. If it had been made and unreasonably refused they might have occupied a very different position.

It is further contended by the plaintiff that under the provisions of section 983, R. L. 1925, the superintendent of public works had no authority to commence work on the canal until the expiration of ten days after the receipt by the landowners of the decision of the appeal board and that having violated the statute the lien in question is invalid. It is true the statute provides for the transmission of a copy of the decision of the appeal board to the landowners and it also provides that "in case the owner or owners of the land shall not within ten days after the receipt of such decision begin work upon such improvements * * * the superintendent may proceed to make * * * such improvements according to the decision of the board." The record shows that the Hawaiian Dredging Company under its contract with the Territory began work on October 1, 1921, that date being prior to the decision of the appeal board which was rendered on August 31, 1922. It is evident , therefore, that the work was begun before the notice of the board's decision was issued to the property owners. This, however, did not affect the right of the property owners. If they had within the ten-day period prescribed by the statute asserted their right, which they did not do, the work already done by the dredging company under its contract would have presented no legal justification for its denial. In fact, it appears from the testimony of Bigelow, who was the superintendent of public works,

that under the contract the Territory was authorized to increase or diminish the work in any way it saw fit. This clause was no doubt included for the very purpose of relieving the Territory of any embarrassment in the event the property owners desired to complete the work that had already been begun. Moreover, what we have already said regarding the waiver by the property owners of their right to attack the notice applies with equal force to the contention now under consideration. The Bishop Estate having remained inactive when it had the right to act the plaintiff is in no position to claim that the lien is void because the work was prematurely begun by the Territory.

The plaintiff makes other contentions which would require consideration if we had decided that the assessment against Lot 256 was unauthorized because of lack of substantial evidence before the appeal board that it was in a condition which rendered it insanitary. Since we have reached a contrary conclusion these contentions need not be considered.

For the foregoing reasons we think the judgment of the circuit court should not be disturbed. The exceptions are therefore overruled.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for plaintiff.

*J. V. Hodgson,* Deputy Attorney General (*C. N. Tavares,* First Deputy Attorney General, on the brief), for defendant.